[No. H026576. Sixth Dist. Mar. 17, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
HARRY ADOLPHUS TERRY, Defendant and Appellant.

COUNSEL

Randi Covin, under Appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Christina Vom Saal and Catherine E. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELIA, J.**—Following a court trial, defendant Harry Adolphus Terry was found guilty of eight counts of committing lewd acts upon a child under the age of 14 (Pen. Code, § 288, subd. (a))[1] and one count of continuous sexual abuse of a child (§ 288.5, subd. (a)) against the same victim. Defendant was ineligible for probation because the court found the section 1203.066, subdivision (a)(8), allegations with respect to counts one and two to be true and defendant admitted the section 1203.066, subdivision (a)(5), allegations with respect to counts three through nine.[2] The trial court imposed a total sentence of 28 years to be served consecutive to the 22-year prison term previously imposed in a Fresno County case in which defendant was convicted of sex crimes (§§ 288.5, 288, subd. (b)(1)).

On appeal, defendant Terry contends that (1) counts four through nine were time-barred, (2) application of subdivisions (f) and (g) of section 803 to counts one through eight and possibly count nine would violate the constitutional prohibition against ex post facto laws, (3) his constitutional right of due process was violated by the admission of evidence under Evidence Code section 1108, and (4) separate punishment on each of the nine counts is impermissible to the extent that those counts involved the "same conduct."

Although we do not agree with any assignment of error, we conclude that the matter must be remanded for a determination whether prosecution of counts four through nine was in fact timely.

---

[1] All further statutory references are to the Penal Code.

[2] Section 1203.066 provides in pertinent part: "(a) Notwithstanding Section 1203 or any other law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provisions of this section be stricken pursuant to Section 1385 for, any of the following persons: [¶] . . . [¶] (5) A person who is convicted of committing a violation of Section 288 or 288.5 and who has been previously convicted of a violation of Section 261, 262, 264.1, 266, 266c, 267, 285, 286, 288, 288.5, 288a, or 289 . . . . [¶] . . . [¶] (8) A person who, in violating Section 288 or 288.5, has substantial sexual conduct with a victim who is under 14 years of age."

## A. *Procedural History*

A felony complaint charging three counts of committing lewd acts upon Jane Doe, a child under the age of 14 (§ 288, subd. (a)), was filed on October 21, 2002. Counts one and two charged defendant with an offense committed on or about or between November 7, 1990 to November 6, 1993 and count three charged him with an offense committed on or about or between January 1, 1995 to November 6, 1996. It was further alleged that a complaint containing the offenses charged in *counts one and two* had been filed within one year of the April 12, 2002 report to the San Jose Police Department by Jane Doe, a child under 18 years of age, that she was a victim of a crime described in section 288, any applicable limitation period specified in sections 800 or 801 had expired, the crimes involved substantial sexual conduct (§ 1203.066, subd. (b)) excluding masturbation that was not mutual, and there was independent evidence that clearly and convincingly corroborated the victim's allegation.

An information, which charged the same three offenses and six additional counts, was filed on July 3, 2003. Counts four through eight charged that defendant had committed a lewd act upon Jane Doe, a child under the age of 14 (§ 288, subd. (a)), and count nine charged that defendant had committed the crime of continuous sexual abuse of a child under 14 (§ 288.5, subd. (a)). Those six additional counts were alleged to have been committed on or about and between January 1, 1995 and November 6, 1996. It was further alleged that a complaint containing the offenses charged in *counts one and two* had been filed within one year of the April 12, 2002 report to the San Jose Police Department by Jane Doe, a child under 18 years of age, that she was a victim of a crime described in section 288, any applicable limitation period specified in sections 800 and 801 had expired with respect to at least one alleged offense, and defendant had committed at least one violation of section 288 against the victim within the limitation period specified in sections 800 or 801.

On August 19, 2003, an amended information was filed. It changed the time period alleged in counts three through eight (lewd acts) to "[o]n or about or between January 1, 1995 and December 31, 1995" and it changed the time period alleged in count nine (continuous sexual abuse) to "[o]n or about January 1, 1996 and November 6, 1996."[3] The amended information con-

---

[3] Section 288.5, subdivision (c), states: "No other felony sex offense involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative."

tained the same further allegation regarding counts one and two made in the original information. The amended information contained no allegations regarding counts three through nine showing they were not time-barred.

Following a court trial, defendant Harry Adolphus Terry was found guilty of all counts.

## B. *Evidence*

The victim testified that she was born in November 1984. At the time she testified, she was 18 years old. She was six years old when she first met defendant, who was dating her mother. Defendant lived with them at three different San Jose residences until defendant and the victim's mother separated when the victim was 12 years of age. Her brother, who was three years younger than the victim, also lived with them. The victim always had her own room in each of the three homes.

Defendant and the victim's mother both worked for the same employer, but he worked nights and she worked days. Defendant cared for the victim during the day while her mother was at work.

The victim described an incident that occurred at the first address when she was about six years old. While her mother was showering, defendant "started caressing [the victim's] vagina area over [her] clothes" as she sat on defendant's lap watching TV in the living room. He continued to rub her vagina for about 15 minutes.

The victim recalled that, after this first incident, defendant touched her this same way in this same room almost every day thereafter while they lived at the first address. They lived at the first address for approximately six months. After they moved to the second address, this type of vaginal touching by defendant over the victim's clothing continued and occurred mainly in the living room.

However, the victim recalled several other incidents that took place at the second address. The victim remembered defendant coming into her room one night, pulling down her pajama bottoms, and directly touching her vagina with his hand for about 15 minutes. She was seven or eight when this occurred. Defendant told her that it was their "little secret" and she should not tell anybody.

The victim testified to a different incident at the second address that occurred about six months later when she was about eight or nine and while her mother was at work. The victim had come inside and gone to her mother's room, where defendant was lying down. Her little brother was still outside. Defendant told her to sit on his lap and had her rub his erect penis through the blanket. He held his hand over her hand and moved her hand up and down for about 15 minutes. She recalled saying that she did not want to do that but he continued.

The victim testified to a second similar incident in her mother's room when her mother was not home. The difference on this occasion was that there was no blanket covering the defendant's erect penis and she could see it. Defendant again put his hand over hers and moved it up and down his penis. This incident lasted for about the same length of time as the other penis-rubbing incident.

The victim testified that they moved to the third address when she was about 10 years old and halfway through fourth grade. She recalled that defendant continued to rub her vagina over her clothing every day, sometimes in the living room and sometimes in her room. He did not touch her breast area. The molestation stopped when defendant moved out. She was about "11, going to 12" years old. She thought it was sometime during her fifth grade school year. She turned 12 in November 1996.

When defendant was no longer living with the family, the victim revealed to her younger niece M., who was living with them at the time, that defendant had been touching her but she did not describe any details. Sometime in 2002, the victim told her sister T. about what had happened. Thereafter, when she was about 17 years old, the victim told her mother, her little brother, and her father that the defendant had touched her when she was little but did not give specifics. The victim's father subsequently brought her to the police station and, on April 12, 2002, she finally spoke to a police officer about being molested.

On April 12, 2002, the victim spoke to Officer Cortes of the San Jose Police Department. Prior to that date, she had spoken to only family members but not to any teachers or counselors. The victim explained that she did not tell the members of her family everything because she did not want them to be ashamed of her and she was afraid they would not believe her. She also did not tell Officer Cortes everything because she was afraid she would not be believed.

The victim's niece M. testified. M. stated that she had lived with the victim at the third address when M. was 12. At the time of her testimony, M. was 17

years old. M. recalled hearing from the victim that defendant had touched her in a sexual way over her clothes. M. told her own mother, C., who was the victim's sister.

The victim's mother testified that defendant lived with her at the three residences for a total of about six years. She indicated that it could have been as late as 1996 that she lived with defendant. The victim's mother confirmed that defendant and she worked different shifts for the same employer and there were many times when defendant was home alone with her daughter and son. About six months after she had split up with defendant, the victim finally told her about defendant touching her. The mother did not call the police.

The victim's sister C., who was 32 years old when she testified in August 2003, stated that in 1998, when she was 24 years old,[4] she lived with the family at the second address for about six months. C. testified that defendant, who was living there too, exposed himself to her about four times, either in the kitchen or the hallway. She described the incidents: "He would have his penis out, and he would be playing with himself as he was looking at me." She confirmed that defendant was masturbating himself.

At some point, C. told her younger sister T. about defendant exposing himself. T. "just started crying," which C. describes as the same general reaction T. has whenever C. speaks of defendant. When C. first asked the victim whether defendant had done anything to her, the victim said "nothing was going on." At some point, the victim told C. that defendant had exposed himself to her but the victim did not say defendant had molested her.

C. also recalled waking up during the night on one occasion to find defendant standing over her with an erection. He was touching her vagina through her clothing but he took off when she awoke. That incident occurred at the second address in the back room of the house where she was sleeping with her kids.

The victim's father, who was divorced from the victim's mother, testified that, in April 2002, the victim told him over the telephone that she needed counseling, and, when asked why, she explained that defendant had molested her. She told him that it had been going on for the past four years at the three residences but she had not told anyone because "she was afraid of what would take place." He subsequently brought her to the San Jose Police Department.

---

[4] C. would have been 24 years old in August of 1995 based upon her age at the time of the August 2003 trial.

Evidence of additional sexual offenses by defendant against two other young girls was also admitted. S. testified that she and her twin sister J. were born in February 1986 and, at the time she testified, they were 17 years old. Defendant was her mother's boyfriend from the time she was in sixth grade until she was a freshman in high school. Defendant had stayed overnight at their home in Fresno County as many as three or four times a week. Defendant and her mother both worked for the same San Jose employer and commuted to work. S. recalled that defendant and her mother worked different shifts and there were times when defendant was at her home but her mother was not there.

S. stated that, when she was in sixth grade, defendant started coming into her room, where she slept alone, at night. He touched her over her clothes and then progressed to touching her under her clothes. He rubbed her breasts and her vagina. He touched the inside of her vagina with his fingers and played with her clitoris. Sometimes she "heard him jacking off." These incidents occurred about two to three times a week.

S. testified that, on an occasion when everyone else was gone, defendant played a pornographic video and began to touch her over her clothing as she was lying on a bed. He then removed her pants and underwear. Defendant tried to have sexual intercourse with her. He told her that "only his head was in" and kept trying but he finally stopped because he was hurting her.

On another occasion, which took place in her mother's room, defendant put S.'s hand on top of his penis, placed his hand over her hand, and moved her hand up and down. S. recalled that, defendant, who taught her how to drive, touched her vagina over her clothing while she was driving.

J., S.'s twin sister, also testified that defendant began touching her when she was in about the sixth grade. Most of those touchings occurred in her bedroom at night. On some occasions, he would touch her vagina and rub her breasts. Sometimes he inserted his fingers into her vagina. This type of touching took place about twice a week. She also recalled an occasion when she was lying down in her room and defendant tried to put his mouth on her vagina. She had pushed him off. She remembered another time in her room when defendant inserted the head of his penis in her vagina.

J. recalled a daytime touching incident that occurred when she was watching television. J. was lying on her stomach on top of the bed with defendant and her sisters and her brother were sitting on the floor. Defendant put his hand underneath her body and touched her vagina under her clothing.

J. related an incident in the kitchen during which defendant leaned over her, took out his penis, and touched it to the middle of her buttock while she was lying on the table with her pants down. She recalled another kitchen incident during which defendant entered the kitchen wearing a towel after coming out of the shower. Defendant indicated to J., who was talking on the phone, that she would have to "jack him off" or get off the phone. She said that she touched his penis. She testified that there were quite a few other times when she touched his penis.

J. agreed that all of the incidents to which she testified occurred "between the time [she was] in fifth grade until [she was] in eighth grade." J. indicated that defendant pled guilty to molesting her and she and her sister appeared at his sentencing hearing.

The twins' mother testified that she had a romantic relationship with defendant that started in 1995 and ended in 1998.

Defendant testified in his own behalf. He denied ever touching the victim in an inappropriate sexual manner.

Defendant stipulated that, prior to any conviction of the offenses charged in counts three through eight, he had been convicted of a violation of section 288.5, subdivision (a) (continuous sexual abuse of a child) in the Fresno County Superior Court.

The prosecutor told the court before trial that, even though counts three through eight involved the same time frame, the People were seeking to show different lewd and lascivious acts based upon the victim's testimony that defendant had touched her in a sexual manner several times a week during that time period. After trial, the prosecutor reiterated that counts three through eight had been charged because defendant was molesting the victim on a daily basis. Count nine, which charged continuous sexual abuse of a child under age 14, concerned the separate time frame of January 1, 1996 to November 6, 1996.

C. *Timeliness of Prosecution of Counts Three Through Nine Under Statute*

1. *Standard Limitation Period Under Section 800*

Defendant asserts that the standard six-year statutory period proscribed by section 800 had expired on counts three through nine before either the information or the amended information was filed in 2003. He points out that the most recent offense, count nine, was charged to have occurred no later than November 6, 1996. (§§ 800, 805.)

The People agree that the six-year limitations period had run as to counts four through eight since these were alleged in the amended information to have been committed on or between January 1, 1995 and December 31, 1995. However, the People suggest that the six-year statute of limitations had not expired as to count nine because the complaint was filed on October 21, 2002 and the evidence supports a finding that at "least one example of this continuous sexual abuse took place after October 21, 1996, but before November 6, 1996, a period encompassed by the six-year statute of limitations . . . ."

■ "[T]he limitations period does not commence as to continuing offenses until the entire course of conduct is complete. ([*People v.*] *Zamora*, [(1976) 18 Cal.3d 538 [134 Cal.Rptr. 784 [557 P.2d 75]]; 1 Wharton, Criminal Law (Torcia ed. 1978) § 90, p. 416; 2 LaFave & Israel, Criminal Procedure (1984) § 18.5, p. 425.)" (*People v. Keehley* (1987) 193 Cal.App.3d 1381, 1385 [239 Cal.Rptr. 5]; see *Toussie v. U.S.* (1970) 397 U.S. 112, 115 [25 L.Ed.2d 156, 90 S.Ct. 858] [" '[s]tatutes of limitations normally begin to run when the crime is complete.' "].) "Determining if a particular violation of law constitutes a continuing offense is primarily a question of statutory interpretation. [Citations.] The answer, however, does not depend solely on the express language of the statute. Equally important is whether 'the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one.' (*Toussie, supra,* at p. 115 [25 L.Ed.2d at p. 161, 90 S.Ct. at p. 860]; see *United States v. Cores* [(1958)] 356 U.S. [405,] 409–410 [2 L.Ed.2d 873, 877–878] 78 S.Ct. [875,] 878–879].)" (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 526 [63 Cal.Rptr.2d 322, 936 P.2d 101].)

■ "The express legislative purpose in enacting section 288.5 was to provide 'additional protection' for victims of child molestation by assuring that 'resident' child molesters and others who repeatedly abuse a child over a prolonged period of time would not escape prosecution because of difficulties in pleading and proving with sufficient precision the dates, times, and particular nature of each molestation. (Stats. 1989, ch. 1402, § 1, (a), (b), p. 6138, reprinted at Historical and Statutory Notes, 29B pt. 2 West's Ann. Evid. Code, [1995 ed.] foll. § 782, at p. 631; *People v. Grant* (1999) 20 Cal.4th 150, 155–156 [83 Cal.Rptr.2d 295, 973 P.2d 72].)" (*People v. Rodriguez* (2002) 28 Cal.4th 543, 549 [122 Cal.Rptr.2d 348, 49 P.3d 1085].) Continuous sexual abuse of a child in violation of section 288.5 clearly is a continuing offense.

The amended information alleges, as did the original information, that the crime of continuous sexual abuse occurred, at the latest, on or about November 6, 1996. No information was filed until more than six years later in 2003.

■ The filing of a criminal complaint does not generally commence the prosecution of a felony for statute of limitation purposes and, unless a formal arrest warrant issues or the case is certified to the superior court (see § 859a), the statute of limitation ordinarily continues to run until an information is filed. (§§ 803, 804.)[5] Neither party claims that an arrest or bench warrant satisfying section 804, subdivision (d), was issued. The original information was not filed until July 3, 2003. Thus, the available record does not establish that a prosecution for any of the charged offenses was commenced within the standard limitations period under section 800.

### 2. *Prosecution Following Victim's Report*

Defendant maintains that section 803, subdivision (f), (hereinafter section 803(f)) does not save the prosecution of counts four through nine and section 803, subdivision (g), (hereinafter section 803(g)) does not save the prosecution of counts three through nine. The People insist that the statutory requirements of those provisions have been met.

### a. *Section 803(f)*

■ Section 803(f)(1) provided at the time the complaint was filed, as it had since its 1993 amendment: "Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a responsible adult or agency by a child under 18 years of age that the child is a victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5." (Stats. 2002, ch. 1059, § 2, eff. Sept. 29, 2002; Stats 1993, ch. 390, § 1, p. 2225.) The subdivision defined, as it still does, a "responsible adult" or "agency" to mean "a person or agency required to report pursuant to Section 11166."[6] (Stats. 2002, ch. 1059, § 2, eff. Sept. 29, 2002; § 803(f).) Section 803(f) applied "only if both of the following occur[red]: [¶] (A) The limitation period specified in Section 800 or 801 ha[d] expired. [¶] (B) The defendant ha[d] committed at least one

---

[5] Section 804 now provides that, for statute of limitation purposes, "prosecution for an offense is commenced when any of the following occurs: [¶] (a) An indictment or information is filed. [¶] (b) A complaint is filed charging a misdemeanor or infraction. [¶] (c) A case is certified to the superior court. [¶] (d) An arrest warrant or bench warrant is issued, provided the warrant names or describes the defendant with the same degree of particularity required for an indictment, information, or complaint."

[6] Under section 11166, "a mandated reporter" must "make a report to an agency specified in Section 11165.9 whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." Section 11165.7 sets forth a list of "mandated reporters," which includes a "district attorney investigator" who is not "working with an attorney appointed pursuant to Section 317 of the Welfare and Institutions Code to represent a minor." (11165.7, subd. (a)(18)).

violation of Section 261, 286, 288, 288a, 288.5, 289, or 289.5 against the same victim within the limitation period specified for that crime in either Section 800 or 801." (Stats. 2002, ch. 1059, § 2, eff. Sept. 29, 2002; § 803(f)(2).)

Defendant argues that the prosecution of counts four through nine was untimely under section 803(f) because those offenses were first charged in the information filed on July 3, 2003, a date more than one year after the victim's report to law enforcement on April 12, 2002, and because the record does not show an offense against the victim within the standard limitations period. He argues: "The prosecution failed to prove by a preponderance of the evidence that at least one touching occurred within the normal six-year limitations period. Since the complaint was filed on October 21, 2002, subdivision (f) applies only if at least one touching occurred after October 21, 1996. The record does not support such a conclusion." Defendant further asserts: "If the Court cannot determine whether the last touching occurred before or after October 21, [1996] the case should be remanded for a hearing to make that determination, but [the] convictions in counts four through nine cannot be affirmed based on subdivision (f) on this record."

The People maintain that the offenses charged in counts four through nine, which were not charged in the October 21, 2002 complaint, relate back to the complaint for statute of limitation purposes and should be deemed filed within one year of the victim's April 12, 2002 report because those offenses involved the same type of conduct and crime and occurred within the same time period as the offense alleged in count three of the complaint and were shown by the preliminary hearing evidence. The People cite section 739 as supporting authority and assert that defendant was not prejudiced by the additional counts charged in the information. Alternatively, the People take the position that "any claim not made to police and not included in the original complaint" should be viewed "as a new report made to the committing magistrate, in the presence of the investigating officer, at the preliminary hearing." They also assert that "any offense that was not committed within the six year statute of limitations period is tied into section 803(f) by [defendant's] commission of one or more acts of molestation after October 21, 1996. This finding was expressly made by the court in its statute of limitations ruling on counts one and two."

█ Section 739 provides: "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information

against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed." "Under section 739, '[t]he law is settled that unless the magistrate makes factual findings to the contrary, the prosecution may amend the information after the preliminary hearing to charge any offense shown by the evidence adduced at the preliminary hearing provided the new crime is transactionally related to the crimes for which the defendant has previously been held to answer.' [Citations.]" (*People v. Superior Court (Mendella)* (1983) 33 Cal.3d 754, 764 [191 Cal.Rptr. 1, 661 P.2d 1081].)

"Prior to 1927, an information could only charge the offense or offenses named in the commitment order [Citation.]" (*Jones v. Superior Court* (1971) 4 Cal.3d 660, 666 [94 Cal.Rptr. 289, 483 P.2d 1241].) "[T]he purpose of the 1927 amendment to former Penal Code section 809 (now § 739) was to permit the district attorney to dispute the magistrate's erroneous designation of the offense shown by the evidence to have occurred, an error of law, not fact. [Citations.]" (*Ibid.*, italics omitted.) Section 739's function is entirely unrelated to time limitations for commencing a prosecution.

■ Furthermore, section 739, like other statutes, must be construed with reference to the whole system of law of which it is a part. (See *People v. Anderson* (2002) 28 Cal.4th 767, 776 [122 Cal.Rptr.2d 587, 50 P.3d 368].) Section 739, for example, does not permit a district attorney to reinstate a special circumstance allegation that is barred under section 1387 (dismissal bar to prosecution). (See *Ramos v. Superior Court* (1982) 32 Cal.3d 26, 36 [184 Cal.Rptr. 622, 648 P.2d 589].) In addition, "[t]he statute is not taken literally . . ." but rather construed consistent with "a criminal defendant's constitutional right to a prior determination by a magistrate or a grand jury that prosecution is warranted. (*Jones v. Superior Court*[, *supra,*] 4 Cal.3d 660, 664[; see Cal. Const. art. I, § 14.]) Thus, an offense charged after the preliminary hearing will be struck unless '(1) the evidence before the magistrate shows that such offense was committed (Pen. Code, § 739), and (2) that the offense "arose out of the transaction which was the basis for the commitment" on a related offense. [Citations.]' ([*Jones v. Superior Court, supra*, 4 Cal.3d] at pp. 664–665.)" (*People v. Santos* (1990) 222 Cal.App.3d 723, 733 [271 Cal.Rptr. 811], see Cal. Const., art. I, § 14.)

■ Section 739 must be construed in the context of the Penal Code provisions establishing the time for commencing criminal actions. (See § 799 et seq.) Section 803, subdivision (a), expressly provides: "Except as provided in this section, a limitation of time prescribed in this chapter is not tolled or

extended for any reason." The People have not referred us to any authority showing that section 739 confers the power to prosecute otherwise time-barred offenses.

The California Supreme Court has concluded that "a defendant who has been timely charged with a felony offense may assert the statute of limitations as a defense to prevent conviction of a time-barred lesser included misdemeanor offense. [Citations.]" (*People v. Statum* (2002) 28 Cal.4th 682, 699 [122 Cal.Rptr.2d 572, 50 P.3d 355]; see Pen. Code, § 805, subd. (b).) Logically, a defendant who has been timely charged with a felony offense may assert the statute of limitations as a defense to prevent conviction of any otherwise time-barred transactionally related offense added to an information based upon preliminary hearing evidence. We conclude that section 739 does not extend the supplemental one-year window period for filing a complaint in regard to any offense encompassed by the victim's April 12, 2002 report that she was a victim of certain crimes.

On the other hand, to the extent that counts four through nine were based upon new testimonial revelations by the victim at the preliminary hearing and were *not* within the scope of her April 12, 2002 report, a different result may obtain. It is possible that such testimony might be viewed as a new "report to a responsible adult or agency." Such a contention has some surface appeal. Upon closer examination, however, it is evident the prosecution of counts four through nine does not satisfy the conditions for applying section 803(f).

The preliminary hearing took place on June 25, 2003. At the time she testified, the victim was 18 years of age. Consequently, the victim was not within the specified reporting age ("under 18 years of age") at the time of her testimony. Our determination makes it unnecessary to decide whether her testimony would qualify as "a report to a responsible adult or agency," which is further defined to mean "a person or agency required to report pursuant to section 11166." (§ 803(f)(2).)

Defendant, perhaps anticipating a slightly different argument, also asserts that the filing of the October 21, 2002 complaint did not toll the statute of limitations on counts four through nine because they were not based upon the "same conduct" within the meaning of section 803, subdivision (b). Section 803, subdivision (b), provides: "No time during which prosecution of the same person for the same conduct is pending in a court of this state is a part of a limitation of time prescribed in this chapter." Defendant further asserts that *People v. Greenberger* (1997) 58 Cal.App.4th 298 [68 Cal.Rptr.2d 61]

and *People v. Bell* (1996) 45 Cal.App.4th 1030 [53 Cal.Rptr.2d 156] were wrongly decided insofar as they construed "same conduct" to mean more than the "same act" and to encompass a course of conduct involving multiple crimes. The People do not rely upon section 803, subdivision (b), but, nevertheless, we briefly address it since the People emphasize that counts four through nine involved "the same conduct, asserted under the same periods, during the same time periods."

The tolling provision contained in subdivision (b) of section 803 "continues the substance of former Section 802.5." (Cal. Law Revision Com. com., 50 West's Ann. Pen. Code (1985 ed.) foll. § 803, p. 203.) Former section 802.5 provided in pertinent part: "[N]o time during which a criminal action is pending is . . . part of any limitation of . . . time for recommencing that criminal action in the event of a prior dismissal of that action, subject to . . . Section 1387." (Stats. 1981, ch. 1017, § 3, pp. 3927–3928; see Stats. 1984, ch. 1270, § 1, p. 4335 [repealing].)

As the Law Revision Commission comment to section 803 explains: "The limitation of former Section 802.5 that permitted recommencing the same 'criminal action' is replaced by a broader standard of prosecution for the 'same conduct,' drawn from Model Penal Code § 1.06(6)(b). The former law that provided tolling only for a subsequent prosecution for the same offense was too narrow, since the dismissal may have been based upon a substantial variation between the previous allegations and the proof. The test of the 'same conduct,' involving as it does some flexibility of definition, states a principle that should meet the reasonable needs of prosecution, while affording the defendant fair protection against an enlargement of the charges after running of the statute." (Cal. Law Revision Com. com., 50 West's Ann. Pen. Code, *supra*, foll. § 803, p. 203.)[7] Section 803, subdivision (b), was intended to ensure "that if a pending prosecution is dismissed for a technical defect, the running of the statute of limitations will not bar reprosecution." (Recommendation Relating to Statutes of Limitation for Felonies (Jan. 1984) 17 Cal. Law Revision Com. Rep. (1984) p. 315, fn. 22.)

---

[7] Subdivision (6) of section 1.06 of the Model Penal Code states in pertinent part: "The period of limitation does not run: [¶] . . . [¶] (b) during any time when a prosecution against the accused for the same conduct is pending in this State." (Model Pen. Code & Commentaries, part I, p. 85.) The Model Penal Code comment explains that subdivision (6)(b) of section 1.06 "tolls the applicable statute during pendency of a prosecution in order to provide for the contingency of the trial's termination prior to final adjudication or reversal on appeal." (Model Pen. Code & Commentaries, *supra,* com. 5 to § 1.06, p. 99.) It also states: "A prosecution is considered 'pending' during that period of time beginning with the day the prosecution is commenced, as defined by Subdivision (5), and ending with the day it is dismissed by final adjudication." (*Id.* at p. 100.) Subdivision (5) of section 1.06 of the Model Penal Code provides: "A prosecution is commenced either when an indictment is found [or an information filed] or when a warrant or other process is issued, provided that such warrant or process is executed without unreasonable delay." (Model Pen. Code & Commentaries, p. 84.)

 Nothing in the language or the legislative history of section 803, subdivision (b), suggests that it was intended to function as a categorical exception to the running of the applicable limitation period for the entire class of same or similar criminal acts allegedly committed by a defendant against the same victim during the same time frame as an offense charged in a pending prosecution. The tolling provision suspends the running of the statute of limitation only for the conduct underlying a charged offense but does not stop the running of the statute of limitation on completely separate instances of criminal conduct, even when acts were proven by "generic" testimony. In this case, the prosecutor maintained that each count represented a separate lewd act and, therefore, the specific conduct underlying count three was not the "same conduct" underlying counts four through nine.[8]

 Moreover, a felony prosecution is not "pending" within the meaning of section 803, subdivision (b), upon the mere filing of a felony complaint because such complaint does not commence prosecution (see § 804, subd. (b)). Our review of the appellate record does not disclose any period of tolling under section 803, subdivision (b), applicable to counts four through nine. (Cf. *People v. Angel* (1999) 70 Cal.App.4th 1141, 1145–1150 [83 Cal.Rptr.2d 222].)[9]

 For all the above reasons, we conclude the record does not establish that prosecution of counts four through nine was timely under section 803(f). Consequently, we do not find it necessary to reach defendant's remaining claim that the record does not show the commission of any qualifying offense against the victim within the standard limitations period as required by

---

[8] Given our determination that the specific course of conduct underlying count three did not include the conduct underlying counts four through nine, we need not decide whether *People v. Greenberger, supra,* 58 Cal.App.4th 298 and *People v. Bell, supra,* 45 Cal.App.4th 1030 correctly construed "same conduct" as used in section 803, subdivision (b). (See *People v. Greenberger, supra,* 58 Cal.App.4th at p. 369 [running of statute of limitation on simple kidnapping offense was tolled by issuance of the arrest warrant for murder since kidnapping was part of the conduct resulting in victim's murder]; *People v. Bell, supra,* 45 Cal.App.4th at p. 1064 ["running of the statute of limitations as to the forgery and false filing offense was tolled by the issuance of the arrest warrant for the rent skimming offenses" because forgery and false filings were merely aspects of rent skimming scheme].)

[9] In *People v. Angel, supra,* 70 Cal.App.4th 1141, a prosecution for multiple sex crimes, the appellate court determined that the statute of limitation had run on 18 counts by the time defendant was held to answer because he was not arrested pursuant to a warrant and the filing of the complaint did not toll the running of the statutory period. (*Id.* at pp. 1145–1150.) The appellate court noted that the Legislature had rejected a proposed version of former section 802.5 that would have provided that the filing of a complaint within the limitations period tolled the running of the statute of limitation. (70 Cal.App.4th at p. 1150, fn. 8.) The court stated: "We cannot, under the guise of statutory interpretation, rewrite the law to include a triggering event omitted by the Legislature. [Citations.] If the Legislature wishes to close the gap created by the combination of sections 803, subdivision (b) and 804, presumably it knows how to do so. [Citation.]" (*Id.* at p. 1150, fn. omitted.)

803(f). We note, however, that the evidence showed the molestations ceased when defendant moved out of the victim's home but the evidence was ambiguous as to exactly when that occurred.

### b. *Section 803(g)*

At the time the complaint was filed, section 803(g) provided in part: "(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5. [¶] (2) This subdivision applies only if both of the following occur: [¶] (A) The limitation period specified in Section 800 or 801 has expired. [¶] (B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals." (Stats. 2002, ch. 1059, § 2, eff. Sept. 29, 2002; see Stats. 1993, ch. 390, § 1, p. 226 [substantially same language in 1993 enactment]; § 803(g).)

As the People point out, under section 803(g), as it read previously and as it reads now, the victim can be any age when the requisite report is made and there is no requirement that defendant commit "at least one" enumerated sex crime against the victim within the standard limitation period. They maintain that the statutory requirements of section 803(g) were satisfied. Defendant argues that section 803(g) is inapplicable to the prosecution of counts three through nine because those counts were not charged within one year of the victim's report to law enforcement, they did not involve "substantial sexual conduct," and the filing of the complaint did not toll any applicable limitations period for any count under section 803, subdivision (b).

First, we have already determined that the filing of the October 21, 2003 complaint did not toll any period of limitations under section 803, subdivision (b). Consequently, we move to defendant's contention regarding "substantial sexual conduct."

Defendant essentially argues that the rubbing of the victim's vagina over her clothes, the only type of sexual offense shown to have been committed against the victim at the third address, does not constitute "substantial sexual conduct" because there was no direct skin-to-skin contact "between appellant's body and [the victim's] genitals" and "not every indirect touching of a child's genital area constitutes masturbation." We reject this argument.

■ "Our role in construing a statute is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning and construing them in context. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230–231 [99 Cal.Rptr.2d 570, 6 P.3d 228].) If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction. (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944]; *People v. Walker* (2000) 85 Cal.App.4th 969, 973 [102 Cal.Rptr.2d 637].) If the statutory language contains no ambiguity, the Legislature is presumed to have meant what it said, and the plain meaning of the statute governs. (*People v. Lawrence, supra,* at pp. 230–231; *People v. Dyer* (2002) 95 Cal.App.4th 448, 453 [115 Cal.Rptr.2d 527].)" (*People v. Johnson* (2002) 28 Cal.4th 240, 244 [121 Cal.Rptr.2d 197, 47 P.3d 1064].) However, language of a statute should not be given a literal meaning if doing so would result in absurd consequences not intended by the Legislature. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr.2d 278, 856 P.2d 1134].)

■ Section 803(g) expressly incorporates the definition of "substantial sexual conduct" contained in section 1203.066 with the exception of "masturbation that is not mutual." Section 1203.066, subdivision (b), defines "substantial sexual conduct" to mean "penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender."

In *People v. Lamb* (1999) 76 Cal.App.4th 664, 677–682 [90 Cal.Rptr.2d 565], the court, after carefully reviewing the legislative history and purpose, determined that the exception stated in section 803(g) refers to a defendant's self-masturbation in the presence of the victim. It held that the defendant's "acts in masturbating the victim fall within the definition of mutual masturbation set forth in section 803, subdivision (g), and thus qualify for the extended statute of limitations described in that section." (76 Cal.App.4th at p. 682.) We agree with the *Lamb* analysis.

■ In addition, defendant has not provided authority showing that an act of masturbation necessarily involves direct skin contact. "Whether the genital touching occurs over clothing is not determinative. Masturbation as . . . is commonly understood can occur under clothing and over clothing." (*People v. Whitlock* (2003) 113 Cal.App.4th 456, 463 [6 Cal.Rptr.3d 389] [Sexually Violent Predators Act (SVPA)]; see *People v. Martinez* (1995) 11 Cal.4th 434, 444 [45 Cal.Rptr.2d 905, 903 P.2d 1037] ["a lewd or lascivious act can occur through the victim's clothing" and does not require contact with

bare skin].) Since neither section 803(g), nor section 1203.066 require an act of masturbation to involve skin-to-skin contact to qualify as "substantial sexual conduct," we have no basis for judicially adding such a requirement.

██ Masturbation is not a specific criminal offense. The touching of a minor's genitals may be an offense under section 288, which makes "any touching" of an underage child accomplished with the requisite intent a crime (*People v. Martinez, supra*, 11 Cal.4th at p. 452). "[T]he form, manner, or nature of the offending [lewd or lascivious] act is not otherwise restricted." (*Id.* at p. 444.)

██ Section 1203.066 does not impose any specific requirements as to the form, manner, or nature of any act of masturbation. One appellate court has determined that the definition of "masturbation" for purposes of showing "substantial sexual conduct" under the SVPA (Welf. & Inst. Code, § 6600.1) "encompasses any touching or contact, however slight, of the genitals of either the victim or the offender, with the requisite intent." (*People v. Chambless* (1999) 74 Cal.App.4th 773, 783 [88 Cal.Rptr.2d 444].)

██ We conclude that an interpretation of the term "masturbation" more restrictive than the touching of genitals in violation of section 288, subdivision (a), would be contrary to the legislative purpose of section 803(g), which is to prevent child molesters from escaping prosecution because their crimes come to the attention of law enforcement only when the victims come forward as adults. (See Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 290 (1993–1994 Reg. Sess.) Apr. 13, 1993, p. 1; Sen. Com., Analysis of Assem. Bill No. 290 (1993–1994 Reg. Sess.) July 13, 1993, p. 2.)

As previously discussed, the record in this case indicates that the victim turned 10 in November 1994 and, while she was 10 years of age and halfway through fourth grade, her family moved to a third address. Thereafter, defendant rubbed her vagina over her clothing every day until he moved out. This touching, which the court found was lewd and lascivious conduct under section 288, qualifies as "substantial sexual conduct."

Lastly, we address the one-year filing requirement. The record shows the October 21, 2002 complaint charging count three was filed within one year of the victim's April 12, 2002 report to the San Jose Police Department. Thus, the one-year issue involves only counts four through nine.

We have already concluded that section 739 cannot cure a valid statute of limitations defense. The question is whether the victim's preliminary hearing testimony constituted a new "report to a California law enforcement agency" as to counts four through nine. We presume for purposes of this appeal that

"a report" may be construed to include a victim's testimonial revelations of previously undisclosed offenses and "a California law enforcement agency" may be construed to include the district attorney's office since the purpose of section 803(g), is to allow a supplemental period for prosecution where there is a reliable accusation of child sex abuse. (See *People v. Frazer* (1999) 21 Cal.4th 737, 763, fn. 24 [88 Cal.Rptr.2d 312, 982 P.2d 180], abrogated in part by *Stogner v. California* (*Stogner*) (2003) 539 U.S. 607 [156 L.Ed.2d 544, 123 S.Ct. 2446].)

Assuming that the victim's preliminary hearing testimony on June 25, 2003, disclosed the offenses charged in counts four through nine for the first time and constituted a new "report to a California law enforcement agency" and, thereby, opened a one-year window period for filing a complaint charging those offenses under section 803(g), the question is whether failure to file another felony complaint within the year rendered prosecution of those counts untimely. Common sense tells us it did not.

 Even though section 803(g) literally requires a complaint to be filed within a year after a qualifying report to a California law enforcement agency, it would be patently absurd to require the filing of another criminal complaint, which would result in a complete duplication of evidence, within a year of the victim's preliminary hearing testimony revealing transactionally related sex crimes. (See § 739; *People v. Downer* (1962) 57 Cal.2d 800, 808–812 [22 Cal.Rptr. 347, 372 P.2d 107].) We are cognizant that " '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) Consequently, the felony complaint filed in this case is deemed to satisfy the filing requirement in section 803(g) as to any transactionally related count that was added to the information based upon preliminary hearing testimony that qualifies as a new "report to a California law enforcement agency."

The People propose that this court may conclude all counts were timely prosecuted based upon the victim's preliminary hearing testimony indicating she withheld information from the police "[*i*]*f* the contents of the preliminary hearing are not in dispute, including the portions where [the victim] addresses counts she did not reveal to the police on April 12, 2002 . . . ." (Italics added.) The victim testified on cross-examination at the preliminary hearing that she did not inform Officer Cortes that defendant sexually molested her just about every day after the first incident at the first address because she "was still uncomfortable with telling anything." She indicated that she later spoke to Detective Phan but did not tell him everything either. The victim told Phan about the incident that took place with a blanket in her mother's

bedroom when she lived at the second address but did not tell him about directly touching defendant's penis with her hand. She indicated that, since making the original statements to Officer Cortes and Detective Phan, she had not discussed any further details with anyone and had not told the prosecutor anything more. Defense counsel showed her a page of Detective Phan's police report to refresh her memory and asked her to read the paragraph regarding the third incident. While the victim's preliminary hearing testimony strongly suggests that she revealed new offenses at the time of defendant's preliminary hearing, the transcript is not sufficiently detailed for us to definitively conclude that counts four through nine were previously unreported to law enforcement, especially since the witness's credibility, not the statute of limitations, was at issue at the preliminary examination.

### c. *Remand*

■ The "long-standing rule requir[es] the *prosecution* to file a charging document that is not, on its face, time-barred." (*People v. Williams* (1999) 21 Cal.4th 335, 345 [87 Cal.Rptr.2d 412, 981 P.2d 42].) "[W]hen the charging document indicates on its face that the action is time-barred, a person convicted of a charged offense may raise the statute of limitations at any time." (*Id.* at p. 341.) Where a prosecutor files an information that, on its face, appears untimely and the record does not establish otherwise, "the fairest solution is to remand the matter to determine whether the action is, in fact, timely." (*Id.* at p. 345.) ■ Therefore, we follow the Supreme Court's directive: "If the court cannot determine from the available record whether the action is barred, it should hold a hearing or, if it is an appellate court, it should remand for a hearing." (*Id.* at p. 341, fn. omitted.) The proper step at this juncture is to remand for a hearing to determine whether counts four through nine were time-barred.

### D. *Constitutional Prohibition Against Ex Post Facto Laws*

Citing *Stogner*, *supra*, 539 U.S. 607, defendant asserts that subdivisions (f) and (g) of section 803 are unconstitutional ex post facto laws if applied because they revive time-barred prosecutions. He points out that the six-year statute of limitations had definitely expired on counts one through eight before the victim's April 12, 2002 report to police and argues that the six-year statutory period had also expired on count nine if the last touching occurred prior to April 12, 1996. Defendant asks this court, if we find the prosecution timely under statute, to nevertheless reverse his convictions on counts one through eight and to remand for a hearing on count nine to determine when the last touching occurred.

Defendant's ex post facto claims must be rejected. The critical question for purposes of ex post facto analysis is not whether the standard limitations period expired before the victim's report to San Jose police but whether subdivisions (f) and (g) of section 803 became effective as to the charged offenses before expiration of the standard limitations period.

In *Stogner*, the defendant had been charged with crimes occurring between 1955 and 1973 and the applicable limitations period "had run 22 years or more before the present prosecution was brought." (*Stogner, supra,* 539 U.S. at p. 610.) The United States Supreme Court concluded that "a law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution." (*Id.* at pp. 632–633.) It determined that such law "falls literally within the categorical descriptions of *ex post facto* laws set forth by Justice Chase more than 200 years ago in *Calder v. Bull* [(1798) 3 U.S. 386 [1 L.Ed. 648, 3 Dall. 386]]" (*id.* at p. 611), specifically category two that includes "any 'law that *aggravates a crime*, or makes it *greater* than it was, when committed,' [citation]" (*id.* at p. 613), which Justice Chase understood as referring to a statute that " 'inflict[s] *punishments*, where the party was not, by *law*, liable to *any punishment*' [citation]." (*Ibid.*)

The U.S. Supreme Court observed that "numerous legislators, courts, and commentators have long believed it well settled that the *Ex Post Facto* Clause forbids resurrection of a time-barred prosecution." (*Stogner, supra,* 539 U.S. at p. 616.) However, the court distinguished extensions of *unexpired* statutes of limitations: "Even where courts have upheld extensions of *unexpired* statutes of limitations (extensions that our holding today does not affect . . .), they have consistently distinguished situations where limitations periods have *expired*. Further, they have often done so by saying that extension of existing limitations periods is not *ex post facto* 'provided,' 'so long as,' 'because,' or 'if' the prior limitations periods have not expired—a manner of speaking that suggests a presumption that revival of time-barred criminal cases is *not* allowed. [Citations.] Cf. *Commonwealth v. Duffy*, 96 Pa. 506, 514, 1880 WL 13543 (188[0]) ('[I]n any case where a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against *ex post facto* laws')." (*Stogner, supra,* 539 U.S. at pp. 618–619.)

As *Stogner* indicates, extensions of existing, unexpired limitations periods are not ex post facto because such extensions do not resurrect otherwise time-barred prosecutions. (*Stogner, supra,* 539 U.S. at pp. 618–619; see *People v. Frazer, supra,* 21 Cal.4th 737, 764, fn. 25.) "[A]n act of limitation is an act of grace purely on the part of the legislature. Especially

is this the case in the matter of criminal prosecutions. The state makes no *contract* with criminals, at the time of the passage of an act of limitation, that they shall have immunity from punishment if not prosecuted within the statutory period. Such enactments are measures of public policy only. They are entirely subject to the mere will of the legislative power, and may be changed or repealed altogether, as that power may see fit to declare. Such being the character of this kind of legislation, . . . in any case where a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against *ex post facto* laws." (*Commonwealth v. Duffy* (Pa. 1880) 96 Pa. 506, 514 [1880 WL 13543], case cited in *Stogner, supra,* 539 U.S. at p. 618 [123 S:Ct. at p. 2454].)

 A Legislature may constitutionally repeal a statute of limitation in its entirety and thereby extend the period for prosecution indefinitely for those offenses for which the limitations period had not already expired (cf. § 799 [prosecution of specified offenses "may be commenced at any time"].) A fortiori, the California Legislature may innovate by enacting a law providing for a supplemental period of prosecution following report by the victim and it is not an unconstitutional ex post facto law as applied to offenses for which there was no statute of limitations defense on the effective date of the new law. California appellate decisions are consistent with this conclusion.[10] (See *People v. Vasquez* (2004) 118 Cal.App.4th 501, 503 [13 Cal.Rptr.3d 162]; *People v. Superior Court (German)* (2004) 116 Cal.App.4th 1192, 1197 [10 Cal.Rptr.3d 893]; *People v. Renderos* (2003) 114 Cal.App.4th 961, 965–966 [8 Cal.Rptr.3d 163].)

Section 803(f) was added in 1989 (Stats. 1989, ch. 1312, § 1, p. 5269), effective January 1, 1990. (See Gov. Code, § 9600 [effective date of statutes]; Cal. Const. art. IV, § 8 [effective date of statutes].) In 1993, subdivision (f) of section 803 was amended to require the reporting victim to be under 18 years of age rather than under 17 years of age. (Stats. 1993, ch. 390, § 1, p. 2225.) In 1993, subdivision (g) was also added to section 803 (Stats. 1993, ch. 390, § 1, p. 2226), effective January 1, 1994. (See Gov. Code, § 9600; Cal. Const. art. IV, § 8.) Subsequent amendments of section 803 of subdivisions (f) and (g) did not change their applicability to the charged offenses.

---

[10] In 2004, the Legislature enacted section 803.6 (Stats. 2004, ch. 368, § 3), which provides: "(a) If more than one time period described in this chapter applies, the time for commencing an action shall be governed by that period that expires the latest in time. [¶] (b) Any change in the time period for the commencement of prosecution described in this chapter applies to any crime if prosecution for the crime was not barred on the effective date of the change by the statute of limitations in effect immediately prior to the effective date of the change. [¶] (c) This section is declaratory of existing law."

Subdivision (f) of section 803, as amended in 1993, became effective prior to expiration of the standard six-year limitations period on all counts, including the oldest counts, counts one and two, which were allegedly committed at the earliest on or about November 7, 1990. (§§ 800, 805.) Subdivision (g) of section 803 also became effective prior to expiration of the standard six-year limitations period on counts one and two. Section 803(g) became effective prior to the commission of the offenses charged in counts three through eight, which allegedly occurred at the earliest on or about January 1, 1995, and prior to the commission of the act of continuous sexual abuse (§ 288.5) charged in count nine, which allegedly commenced at the earliest on or about January 1, 1996 and was committed "during a period of not less than three months."

Accordingly, any application of section 803(f) or 803(g) does not violate the constitutional prohibition against ex post facto laws.

### E. *Evidence Code Section 1108*

Defendant contends that the admission of evidence pursuant to Evidence Code section 1108, which permits evidence of other sex crimes committed by a defendant to be admitted in a prosecution of a sexual offense to show the defendant's disposition to commit such crimes, violates due process. Defendant recognizes that we are bound to follow the California Supreme Court opinion of *People v. Falsetta* (1999) 21 Cal.4th 903 [89 Cal.Rptr.2d 847, 986 P.2d 182] and he is raising the issue solely for purposes of preserving the issue for federal review. In *Falsetta*, our state's high court rejected a due process challenge to Evidence Code section 1108 (*People v. Falsetta, supra,* 21 Cal.4th at pp. 910–922) and so must we. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

### F. *Section 654*

Defendant argues that, to the extent that this court concludes that counts one through nine involve the "same conduct," section 654 (prohibition against multiple punishment), the right to due process, and the doctrine of judicial estoppel (see *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986–987 [12 Cal.Rptr.3d 287, 88 P.3d 24]) preclude the "imposition of multiple punishment" on each count. Since we have not concluded that counts one through nine involve the same underlying conduct, we do not reach this argument.

The judgment is reversed and the matter is remanded for a determination whether the prosecution of counts four through nine was time-barred. Following such determination, the court shall reinstate the judgment of conviction as to each timely count.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied May 7, 2005.