[No. D053727. Fourth Dist., Div. One. Mar. 16, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
LEE ROY LYNCH, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III.B. through III.H.

COUNSEL

Russell S. Babcock for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

AARON, J.—

## I.

## INTRODUCTION

Defendant Lee Roy Lynch appeals from his conviction after a jury trial. The charges against Lynch relate to the shooting of Latoya Younger, who was Lynch's girlfriend at the time she was shot. A jury convicted Lynch of attempted murder, assault with a firearm, corporal injury on a cohabitant, negligently discharging a firearm, being a felon in possession of a firearm, and being a felon in possession of ammunition. The jury also found true the enhancement allegations that Lynch personally inflicted great bodily injury under circumstances involving domestic violence, and that he personally used a firearm.

On appeal, Lynch contends (1) that the trial court erred in denying his motion to dismiss all of the counts, with the exception of the attempted murder charge, on statute of limitations grounds; (2) that the court abused its discretion in not dismissing all of the charges due to precharging delay; (3) that the court improperly admitted in evidence at trial Latoya Younger's

testimony from the preliminary hearing; (4) that the court improperly admitted a number of statements that Latoya Younger made to others to the effect that her boyfriend had shot her; (5) that there is insufficient evidence to support Lynch's conviction for attempted murder; (6) that there is insufficient evidence to support the jury's finding that Lynch was involved in a domestic and/or dating relationship with Latoya Younger at the time of the shooting; (7) that the court erred in refusing to instruct the jury on the lesser included offense of attempted voluntary manslaughter; and (8) that the prosecutor engaged in prosecutorial misconduct by improperly shifting the burden of proof to Lynch during closing argument by commenting on Lynch's failure to call certain witnesses.

The People acknowledge that, on its face, the charging document shows that counts 2 through 6 were not charged within the applicable statute of limitations. However, the People urge this court to remand the matter to the trial court for a hearing concerning whether the statute was tolled prior to the time the charges were filed. We agree that remand is appropriate in this case so that the trial court can determine whether the statute of limitations had run on all of the charges except the attempted murder count by the time Lynch was charged, or instead, whether the statute was tolled.

We address the other claims that Lynch raises on appeal because some of the claims involve the attempted murder count, which is not affected by his statute of limitations argument, and because these issues will have to be resolved if the trial court determines that the statute of limitations had not run, and that the judgment of conviction on counts 2 through 6 stands. We reject these other contentions, and remand the matter to the trial court for the limited purpose of holding a hearing to determine whether Lynch's prosecution on counts 2 through 6 was time-barred.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*

1. *The prosecution's case*

At around midnight on December 9, 2001, San Diego Police Sergeant Andrew Fellows responded to a report of a shooting at an apartment on Market Street in San Diego. When Fellows arrived at the apartment, he found

Latoya Younger[1] lying on the couch, bleeding from what appeared to be a gunshot wound to the chest. Paramedics arrived at the scene a few minutes later. Fellows rode in the ambulance to the hospital with Younger. During the ambulance ride, Younger told Fellows that Lynch had pulled a gun out of a black backpack and shot her.

Another officer searched the apartment and found a black backpack. Inside the backpack, he found women's clothing, a single .22-caliber bullet, a checking deposit receipt with Lynch's name on it, and a brown case. The brown case contained 60 grams of cocaine base.

Dr. Scott Ellner, a trauma surgeon at UCSD Medical Center, treated Younger when she arrived at the hospital. According to Dr. Ellner, Younger's injury was life threatening. The bullet entered Younger's body just above her left clavicle and cut through a major artery. Dr. Ellner estimated that if Younger's wound had not been treated, she would have bled to death in under an hour. As part of his assessment of Younger's level of consciousness, Dr. Ellner asked Younger whether she remembered her name and what had happened to her. Younger told Dr. Ellner that she had been shot by her boyfriend.

Doctors at the hospital performed surgery on Younger to repair her damaged artery. Younger remained in the hospital for approximately 16 days after the surgery.

On the afternoon of December 10, San Diego Police Detective Ronald Snow interviewed Younger in the hospital. Younger appeared to be alert and coherent during the interview. Younger told Snow that she had been "homeless in a sense" but that she had been staying in the apartment where she was shot, "on and off with her boyfriend [Lynch]." Lynch had been in and out of the apartment on the day of the shooting, and had left the apartment approximately an hour before the shooting. He returned about 50 minutes later. Younger was upset that Lynch had been gone and wanted to know where he had been. Younger and Lynch began to argue while Younger was in the living room with her cousin, Darnella Brown, and Lynch was in the dining room. As Lynch and Younger argued, Lynch pulled a gun out of a black backpack, pointed it at Younger, and shot at her. Younger ran to the

---

[1] After the shooting, Younger married Lynch and now goes by the name Latoya Lynch. For purposes of clarity, we refer to the victim as Younger throughout this opinion.

bathroom and locked herself inside. At first Younger did not realize that she had been shot, but then she saw blood "everywhere."

Younger told Snow that she and Lynch both used the black backpack, but that she had never seen the gun before. Younger said that she did not know that Lynch had a gun. Snow attempted to locate Lynch after the shooting but was unsuccessful.

At the time of the incident, Younger's brother, Jerry Pradd, Jr., was in the apartment, sleeping in his room upstairs. Pradd heard a gunshot and then heard Younger scream that she had been shot. Pradd called 911. After calling 911, Pradd went downstairs, where he saw Younger lying on the couch.

Detective Snow interviewed Pradd on January 9, 2002. Pradd told Snow that on the day of the shooting, Pradd heard Darnella scream, "Oh, my God, you've been shot." When Pradd ran downstairs, Younger told him that Lynch had shot her. Pradd also told Detective Snow that Lynch occasionally stayed at the apartment with Younger.

In 2002, Younger and Lynch married. They have two children together.

Younger did not testify at trial. However, she did testify at the preliminary hearing, and that testimony was read to the jury at trial. Younger said that she and Lynch had been "dating or in a romantic relationship" for eight years before they married in 2002. They had lived together before they were married, and sometimes stayed with Younger's father and brother in the apartment where Younger was shot.

According to Younger, a number of people had been hanging around the apartment complex on the day and/or evening of the shooting. Younger had been in and out of the apartment, and she and Lynch saw each other "here and there." Younger had been drinking that day. Younger denied that she had gotten into an argument with Lynch on the night of the shooting, and said that the only thing she remembered was "waking up at the hospital about two days later." The last thing she remembered before waking up in the hospital was "drinking."[2] Younger denied having told Detective Snow that Lynch had

---

[2] The parties stipulated that just after the shooting, Younger's urine tested positive for marijuana and negative for any other drugs, and that her blood-alcohol content was 0.11 percent.

shot her. During her testimony at the preliminary hearing, Younger claimed that she did not know who had shot her.

### 2. *The defense*

Lynch testified that he and Younger were married in 2003 and have two children together. According to Lynch, he and Younger lived in San Diego and then in Winslow, Arizona, after they married.

Lynch stated that in 2001, Younger was a prostitute whom he paid to have sex with him. According to Lynch, he and Younger were not dating at that time, and he never stayed in Younger's parents' apartment. Lynch said that he would sometimes give Younger money to pay his union dues for him. The receipt that was found in the backpack was a receipt for Lynch's union dues.

Lynch recognized the black backpack as one that Younger often took with her. He claimed that he had never had possession of the backpack, and said that he had never put a gun in it. Lynch testified that he had not shot Younger. Lynch denied having been in the apartment on the day of the shooting, and said that he was in Jasper, Texas, when he first heard that Younger had been shot. Lynch claimed that he had taken Greyhound buses to Texas.

Lynch stated that after he returned to San Diego, he went with Younger's mother, Evonne Pradd, to visit Younger in the hospital. Lynch and Younger became closer while she was in the hospital, and she indicated to him that she wanted to move away from San Diego. After Younger was released from the hospital, Lynch and Younger lived together in San Diego for a few months and then moved to Winslow, Arizona. After approximately a year and a half, Younger and Lynch moved back to San Diego.

Lynch maintained that Younger had told him that she had been shot in a drive-by shooting.

### B. *Procedural background*

By information filed May 8, 2006, Lynch was charged with attempted murder (Pen. Code,[3] §§ 664, 187, subd. (a) (count 1)); assault with a firearm (§ 245, subd. (a)(2) (count 2)); corporal injury upon a cohabitant (§ 273.5, subd. (a) (count 3)); discharging a firearm in a grossly negligent manner (§ 246.3 (count 4)); being a felon in possession of a firearm (§ 12021,

---

[3] Further statutory references are to the Penal Code unless otherwise specified.

subd. (a)(1) (count 5)); and being a felon in possession of ammunition (§ 12316, subd. (b)(1) (count 6)). The information also alleged that Lynch personally inflicted great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)) with respect to counts 1, 3, and 4, and that Lynch personally used a firearm (§ 12022.5, former subd. (a)(1)) in connection with counts 1, 2, and 3.

Trial began on June 1, 2007. On June 7, the jury returned verdicts convicting Lynch on all counts and also returned true findings on the enhancement allegations.

Lynch was appointed new counsel on July 6. His attorney filed a motion for new trial, which the trial court heard and denied on August 1.

The court sentenced Lynch on September 10, 2007, to a total term of 17 years in prison. Lynch filed timely notices of appeal on September 10 and September 18.[4]

### III.

### DISCUSSION

A. *The case must be remanded to the trial court for a determination as to whether the statute of limitations was tolled*

Lynch contends that his convictions on counts 2 through 6 are barred by the statute of limitations. In response, the People acknowledge that on its face, the charging document appears to establish that counts 2 through 6 were not charged within the applicable statute of limitations. However, the People argue that because Lynch failed to raise the statute of limitations either before or during the trial, the matter should be remanded to the trial court for a determination as to whether the statute may have been tolled, for two possible reasons—i.e., because Lynch was out of the state for some part of that time and/or because an arrest warrant was issued within the limitations period.

1. *Additional background*

The information alleged that Lynch committed the offenses on December 8, 2001. The information was filed May 8, 2006, which is approximately four years five months after the date of the offenses. The information does not

---

[4] It appears that Lynch's attorney filed one notice of appeal on September 10, 2007, and that Lynch filed his own notice of appeal on September 18, 2007.

include any tolling allegations, or any other allegations that would explain the delay in filing the charges.

Lynch did not raise a statute of limitations challenge to any of the counts against him either before or during trial.

At trial, Lynch testified that he and Younger lived in Arizona for some period of time between the 2001 offenses and the date on which he was charged with the offenses. The record is unclear, however, as to the actual dates that Lynch resided outside of California.

After trial, Lynch obtained new counsel. Lynch then filed a motion for new trial, arguing (1) that the trial court erred in admitting in evidence statements that Younger made to other persons just after the shooting; (2) that there was newly discovered evidence in the form of witnesses who could testify that Lynch was in transit to Texas at the time of the shooting; and (3) that Lynch's trial counsel provided ineffective assistance. At the hearing on the motion for new trial, the trial court was also prepared to hear argument pertaining to Lynch's claim that his case should be dismissed on speedy trial grounds. In response to the trial court's inquiry as to whether Lynch's counsel "wish[ed] to argue [the speedy trial motion] today," counsel stated:

"Your Honor, I think we could. Before we get there, the defense would respectfully make a motion sua sponte for arrest of judgment pursuant to Penal Code section 1185 vis-à-vis charges 2, 3, 4, 5, 6. I think that's all of them.

"The basis of the motion, Your Honor, is that, in going back through all this yet again, it appears that the complaint and/or—well, the complaint was filed about—well over three years beyond the statute of limitations with respect to those counts, counts 2, 3, 4, 5, 6. I think the statute pursuant to Penal Code section 800 and 801 indicates that since these offenses carried terms of less than eight years, the statute would have been three years—statute of limitations for those offenses would have been three years.

"And the offense occurred December 8, 2001. The complaint was filed, my record indicates, May of 2006. So, in excess of the statute of limitations. And that's a jurisdictional defect which can be raised pursuant to an 1185 motion. Not that it necessarily has any practical effect that I can see at this moment, but nonetheless, I think those should be dismissed based upon those circumstances."

The prosecutor responded: "Your Honor, this is the first that I have heard of a jurisdictional claim pursuant to 1185. I believe it's actually a notice[d] motion. I believe there's a waiver of jurisdiction if it's not brought. I would

ask the court to deny it. [¶] I also believe that, in terms of the filing of the complaint, the tolling actually occurs if there's a warrant, and the warrant was in the system for quite some time. But I believe this issue has been waived. I believe it's a notice[d] motion issue, and the court should not address it at this time. If it's inclined to entertain it—because I have had absolutely no notice of this issue."

The trial court denied the motion, stating, "All right. At this time, the court is denying the motion pursuant to Penal Code section 1185. [¶] Okay." Defense counsel then replied, "Your Honor, just so the record's clear, that defect or challenge—challenge based upon the statute of limitations is jurisdictional. It can be waived by a defendant who expressly waives it and pleads guilty, but if he did not—and, obviously, Mr. Lynch did not in this case—then it can even be raised for the first time on appeal. So to the extent that that matters, I want to bring that to the court's attention." The court thanked defense counsel and then inquired about defense counsel's argument on the speedy trial issue.

Lynch did not raise the statute of limitations issue again in the trial court.

### 2. *Analysis*

The People essentially concede that, on its face, the information indicates that counts 2 through 6 were time-barred because the information was not filed within three years of the commission of those offenses. Section 801 provides that, with certain exceptions, "prosecution for an offense punishable by imprisonment in the state prison shall be commenced within three years after commission of the offense." For purposes of the statute of limitations, a felony prosecution commences when either "[a]n indictment or information is filed," "[a] complaint is filed charging a misdemeanor or infraction," "[t]he defendant is arraigned on a complaint that charges the defendant with a felony," or "[a]n arrest warrant or bench warrant is issued, provided the warrant names or describes the defendant with the same degree of particularity required for an indictment, information, or complaint." (§ 804.) Under section 803, subdivision (d), the statute of limitations may be tolled "up to a maximum of three years during which the defendant is not within the state."

■ As the Supreme Court affirmed in *People v. Williams* (1999) 21 Cal.4th 335 [87 Cal.Rptr.2d 412, 981 P.2d 42] (*Williams*), "when the charging document indicates on its face that the action is time-barred, a person convicted of a charged offense may raise the statute of limitations at any time," including on appeal. (*Id.* at p. 341.) Like the charges in counts 2

through 6 of the information filed in this case, the information in *Williams* indicated, on its face, that the action was time-barred. The information in *Williams*, which was filed on April 7, 1995, charged the defendant with an offense committed " '[o]n or about February 10, 1992.' " (*Id.* at p. 338.) "The information contained no additional allegations relevant to whether the statute of limitations barred the action." (*Ibid.*) The defendant waived jury trial, and the court eventually found him guilty and sentenced him to three years in prison. (*Ibid.*)

The *Williams* court described the appellate history of that case as follows: "On appeal, defendant argued for the first time that the prosecution was time-barred because the information alleged that he committed the offense more than three years before it was filed, and it contained no other facts or tolling allegations that would make the prosecution timely. The Attorney General argued that defendant was too late in asserting the statute of limitations. In addition, citing information outside the appellate record, he claimed that the prosecution was timely because an arrest warrant had issued on January 31, 1995, within the statutory time limit, and delayed discovery tolled the statute of limitations. Citing [*People v.*] *Chadd* [(1981)] 28 Cal.3d [739,] 758 [170 Cal.Rptr. 798, 621 P.2d 837], he urged that at least the prosecution should be allowed to amend the information on remand. The Court of Appeal remanded the matter for a hearing on whether the action was timely. Apparently because defendant had waived a jury trial, it ordered the court to make the determination. It concluded, 'If the trial court finds the statute of limitations had run, the court is instructed to vacate the judgment. If the trial court finds the statute of limitations had not yet run, the judgment of conviction shall stand.' " (*Williams, supra,* 21 Cal.4th at p. 338.)

As in *Williams*, the information in this case was filed more than three years after the date on which it alleged Lynch committed the charged offenses. Thus, on the face of the information, the prosecution of counts 2 through 6 was untimely.[5] However, Lynch did not raise the statute of limitations issue until months after his trial had concluded and he had been convicted. When Lynch finally did raise the statute of limitations issue, the prosecutor raised at least one potential fact that was not alleged in the information which, if true, might make the prosecution of these counts timely—i.e., that an arrest warrant may have been filed within the three-year limitations period, thus timely commencing the action. On appeal, the People also raise the possibility that the limitations period may have been tolled for some period of time while Lynch was residing outside of California.

[5] Lynch does not challenge the timeliness of his prosecution on count 1, the attempted murder count, essentially conceding that the prosecution on that count was timely. (See § 800 [prosecution for offenses punishable by prison terms of eight years or more must be commenced within six years of the offense].)

Because of the state of this record on appeal, we find ourselves "unable to determine from the appellate record whether the action" against Lynch "was, in fact, time-barred." (*Williams, supra,* 21 Cal.4th at p. 339.)

The *Williams* court advised, "If the court cannot determine from the available record whether the action is barred, it should hold a hearing or, if it is an appellate court, it should remand for a hearing." (*Williams, supra,* 21 Cal.4th at p. 341, fn. omitted.) The *Williams* court went on to state that, "if on remand, the trial court determines the action is not time-barred, the conviction will stand despite the prosecution's error in filing an information that appeared time-barred . . . ." (*Id.* at p. 346.) The court explained: "Justice Brown's opinion in *Cowan* [*v. Superior Court* (1996) 14 Cal.4th 367 [58 Cal.Rptr.2d 458, 926 P.2d 438]] argued that 'Since [*People v.*] *McGee* [(1934) 1 Cal.2d 611 [36 P.2d 378]] was decided, the determination of whether the statute of limitations applies in a given case has become an extraordinarily complex and time-consuming task, often requiring both factual development and the resolution of difficult legal issues,' and '[g]iven the complexities of our modern criminal statutes of limitations, without an adequate record, the trial court cannot properly assess issues arising under the statutes, and meaningful appellate review is virtually impossible.' (*Cowan, supra,* 14 Cal.4th at pp. 387, 388 (conc. & dis. opn. of Brown, J.).) We agree on the need for an adequate record. The record here is utterly inadequate. No reviewing court can meaningfully assess whether the statute of limitations had expired or whether counsel was ineffective for not raising the issue. Either an express waiver of the statute of limitations or a charging document that contains allegations making the action timely would aid the reviewing court's task immensely." (*Williams, supra,* 21 Cal.4th at p. 344.)

Lynch maintains that remand is not appropriate in this case. Specifically, Lynch contends that his convictions on counts 2 through 6 should be dismissed because the reasoning of *Williams* does not apply in this case. Lynch distinguishes *Williams* on the ground that the defendant in *Williams* never raised the statute of limitations issue prior to his appeal. According to Lynch, because Lynch raised the statute of limitations issue in his motion for new trial, he raised it "in the trial court," and the "matter was fully adjudicated." Lynch further contends that the remedy in *Williams* is expressly limited to cases in which the defendant never asserted the statute of limitations in the trial court, noting that the *Williams* court stated in a footnote: "This case presents no issue regarding the rules to apply when the defendant does assert the statute of limitations at trial. A variety of issues may arise in many different factual contexts. We leave these questions to future courts." (*Williams, supra,* 21 Cal.4th at p. 345, fn. 3.)

In making this argument, Lynch fails to appreciate the distinction between raising an issue at or before *trial* and raising an issue in the *trial court*. What

occurred in this case demonstrates the significance of this distinction. Although Lynch did initially raise the statute of limitations issue with the trial court and not, as in *Williams*, on appeal, Lynch did not raise the issue *prior to or during trial*, when the trial court could have more readily held a hearing on the matter (pretrial), or submitted any factual issues to the jury (during trial). Rather, Lynch raised the issue in a motion for new trial, *after* his trial had concluded and he had been convicted. The specific question that the *Williams* court was considering was "whether 'the statute of limitations in a criminal case is an affirmative defense which is forfeited if not raised *before or during trial.*' " (*Williams, supra,* 21 Cal.4th at p. 339, italics added.) Lynch is thus in the same position as the defendant in *Williams* since, like the defendant is *Williams*, Lynch did not raise the statute of limitations issue "before or during trial."

Lynch's argument that this court should conclude that the People have forfeited the opportunity to litigate the "factual issues" related to the statute of limitations, such as tolling, because the People failed to litigate those issues in the trial court, is similarly flawed. In making this argument, Lynch relies on the following language in *Williams*: "[T]he problem here is limited to those cases in which the prosecution files a charging document that, on its face, indicates the offense is time-barred. '[W]here the pleading of the state *shows that the period of the statute of limitations has run,* and nothing is alleged to take the case out of the statute, for example, that the defendant has been absent from the state, the power to proceed in the case is gone.' ([*People v.*] *McGee, supra,* 1 Cal.2d at pp. 613–614, italics added.) *McGee* does not apply to an information that, as it should, either shows that the offense was committed within the time period or contains tolling allegations. *Although, under our cases, defendants may not forfeit the statute of limitations if it has expired as a matter of law, they may certainly lose the ability to litigate factual issues such as questions of tolling.*" (*Williams, supra,* 21 Cal.4th at p. 344, italics added.)

According to Lynch, if a defendant may "lose the ability to litigate factual issues such as questions of tolling," then the prosecution should also face the possibility of losing the ability to litigate such factual issues. Lynch urges that we apply this standard to the prosecution here, so as not to permit the People to present additional facts on remand concerning possible tolling of the statute of limitations. However, because of the time and manner in which Lynch raised the statute of limitations challenge in the trial court (i.e., *after* trial, and by way of an unnoticed oral motion at a hearing on another matter), the prosecution cannot be deemed to have forfeited its opportunity to litigate the tolling issues.

■ In this case, *both* parties are partly to blame for the fact that Lynch was tried on, and convicted of, potentially time-barred counts. Where a

prosecutor files an information that, on its face, contains charges that appear to be time-barred, and the record does not establish otherwise, at least in part because the defendant failed to raise the issue before or during trial, "the fairest solution is to remand the matter to determine whether the action is, in fact, timely." (*Williams, supra,* 21 Cal.4th at p. 345.)[6]

Lynch concludes that "[a] remand will not reveal evidence that the government timely filed an arrest warrant because the record proves that the first charging document was the information that the prosecution filed on May 8, 2006, five years after the offense." It is unclear why Lynch believes that the record "proves" that the information was the first charging document. Although the information is the first charging document that is contained in the record on appeal, the transcript of the posttrial hearing indicates that an arrest warrant may have been issued prior to the filing of the information. Thus, the record does not "prove" anything with respect to when the prosecution of this case actually commenced. Rather, the record here—like the record that was available to the *Williams* court—is simply insufficient to allow this court to make any final determination as to the timeliness of the prosecution of counts 2 through 6.

The appropriate step at this point is thus to remand the case to the trial court for further proceedings to determine whether counts 2 through 6 were or were not prosecuted within the statute of limitations. (See *People v. Terry* (2005) 127 Cal.App.4th 750, 774 [26 Cal.Rptr.3d 71] [following *Williams*'s directive to remand for a hearing if the court cannot determine from the available record whether the action is timely: "The proper step at this juncture is to remand for a hearing to determine whether counts four through nine were time-barred."].)

Although it is clear that it is appropriate in this instance to remand the matter to the trial court for further proceedings, we have found no case that specifically addresses whether any underlying factual issues relating to the statute of limitations are to be determined by the court, or instead, by a jury,

---

[6] The *Williams* court noted that both parties bear some responsibility for the problems that arise from a late-raised statute of limitations challenge to a charging document that appears, on its face, to be untimely: "[T]he prosecutor has full control over the charging document. Here, the district attorney could easily have alleged in the information either that an arrest warrant issued before the time period had expired, or that the action was filed timely after discovery of the crime, or both (assuming either allegation is factually supported). The silent record is partly the defendant's fault for not raising the issue at trial. It was, however, the prosecution's fault in the first instance for filing an information that, on its face, was untimely. In that situation, the fairest solution is to remand the matter to determine whether the action is, in fact, timely." (*Williams, supra,* 21 Cal.4th at p. 345.)

on remand.[7] In *People v. Zamora* (1976) 18 Cal.3d 538, 563, fn. 25 [134 Cal.Rptr. 784, 557 P.2d 75] (*Zamora*), the Supreme Court held that although a trial court may hold a preliminary hearing to attempt to decide statute of limitations issues as a matter of law, if the court cannot make a determination as a matter of law, questions concerning the statute of limitations are to go to the jury. However, more recent Supreme Court decisions place the continued viability of *Zamora* in question. (See *People v. Posey* (2004) 32 Cal.4th 193, 215 [8 Cal.Rptr.3d 551, 82 P.3d 755] (*Posey*) [determining that venue is a question of law for the court to determine, overruling previous authority that venue is a question of fact for the jury]; *People v. Betts* (2005) 34 Cal.4th 1039, 1054 [23 Cal.Rptr.3d 138, 103 P.3d 883] [territorial jurisdiction is a procedural matter, and the Constitution does not require a jury trial on factual questions relating to jurisdiction].) As the Supreme Court said in *Posey*, "[A]lthough questions of fact relating to the substantive issue of guilt or innocence are within the province of the jury, questions of law concerning procedural issues that do not themselves determine guilt or innocence— including any underlying questions of fact—are within the province of the court. [Citation.]" (*Posey, supra*, 32 Cal.4th at p. 207.)

Whether an action is time-barred under the applicable statute of limitations does not involve a "substantive issue of guilt or innocence." However, since no case has expressly overruled *Zamora*, we presume that *Zamora* remains good law and that a defendant who raises a statute of limitations question before or during trial has the right to have a jury decide underlying factual questions pertaining to whether the action is timely.

The *Williams* court did not address the question whether a defendant who does not raise a statute of limitations issue until *after* conviction is entitled to have a jury decide underlying factual questions that go to the timeliness of the action, however, because the defendant in *Williams* had waived his right to a jury trial.[8] (*Williams, supra*, 21 Cal.4th at p. 338.) However, the holding in *Williams* pertaining to the procedure to be followed on remand is not based

---

[7] At oral argument, we asked the parties what procedure should be followed on remand if this court were to conclude that remand is appropriate under *Williams*. After oral argument, we requested that the parties submit supplemental briefing addressing the following question: "On remand, if the trial court cannot determine, as a matter of law, that an arrest warrant meeting the requirements of Penal Code section 804 was issued within the relevant limitations period, what would be the appropriate procedure for determining any remaining statute of limitations tolling issues?"

We have considered both parties' letter briefs in reaching our conclusion.

[8] Again, the *Williams* court described the relevant portion of the procedural background of the case as follows: "On appeal, defendant argued for the first time that the prosecution was time-barred because the information alleged that he committed the offense more than three years before it was filed, and it contained no other facts or tolling allegations that would make the prosecution timely. The Attorney General argued that defendant was too late in asserting the statute of limitations. In addition, citing information outside the appellate record, he

on the fact that the defendant in that case waived jury trial, and the court did not limit the procedure to be followed on remand to cases in which the defendant *has* waived jury trial: "Because the defendant in *Cowan* wanted to waive the statute of limitations expressly, we did not decide whether to overrule the prior cases' holdings and 'hold that the statute of limitations in criminal cases is an affirmative defense, which is forfeited if a defendant fails to raise it before or at trial.' (*Cowan* [*v. Superior Court*], *supra*, 14 Cal.4th at p. 374.) . . . The question is presented here. We now conclude that when the charging document indicates on its face that the action is time-barred, a person convicted of a charged offense may raise the statute of limitations at any time. *If the court cannot determine from the available record whether the action is barred, it should hold a hearing or, if it is an appellate court, it should remand for a hearing.*" (*Williams, supra,* 21 Cal.4th at pp. 340–341, italics added, fn. omitted.)

■ There is nothing in this language that suggests that statute of limitations questions must be submitted to a jury if the defendant does not raise the statute of limitations issue until after he has been convicted of the offense, or that remand for a court hearing should occur only when the defendant has waived his right to jury trial. Rather, the *Williams* court appears to have provided guidance as to what appellate and trial courts should do in *any* situation in which the charging document is untimely on its face, but the defendant fails to raise the issue until after trial.[9]

We conclude that *Williams* requires remand for the *trial court* to determine whether counts 2 through 6 were prosecuted within the statute of limitations.

B.–H.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

claimed that the prosecution was timely because an arrest warrant had issued on January 31, 1995, within the statutory time limit, and delayed discovery tolled the statute of limitations. Citing *Chadd, supra,* 28 Cal.3d at page 758, he urged that at least the prosecution should be allowed to amend the information on remand. The Court of Appeal remanded the matter for a hearing on whether the action was timely. *Apparently because defendant had waived a jury trial, it ordered the court to make the determination.* It concluded, 'If the trial court finds the statute of limitations had run, the court is instructed to vacate the judgment. If the trial court finds the statute of limitations had not yet run, the judgment of conviction shall stand.' " (*Williams, supra,* 21 Cal.4th at p. 338, italics added.)

[9] The appellate court in *People v. Terry, supra,* 127 Cal.App.4th at page 774, also appears to have interpreted *Williams* to hold that the trial court, not a jury, is to determine statute of limitations issues on remand. The *Terry* court remanded "for a hearing to determine whether counts four through nine were time-barred"—with no mention of presenting these questions to a jury. (*Terry, supra,* at p. 774.)

*See footnote, *ante,* page 1262.

## IV.

## DISPOSITION

Lynch's conviction for attempted murder is affirmed. The judgment with respect to counts 2 through 6 is reversed, and the matter is remanded for a determination as to whether the prosecution of counts 2 through 6 was time-barred. Following such determination, the court shall reinstate the judgment of conviction as to each timely count.

McConnell, P. J., and Nares, J., concurred.