Filed 3/5/26  P. v. Tindall CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D087152 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF2101230) |
| CHRISTOPHER JOHN TINDALL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Timothy F. Freer, Judge.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Christopher John Tindall of two counts each of maintaining a place for the unlawful sale of cannabis (Health & Saf. Code,[1] § 11366, counts 1 & 3), and possession of cannabis for sale (§ 11359, subd. (b), counts 2 & 4).  The court sentenced him to two years in prison after Tindall indicated he was unwilling to agree to any probation terms and conditions.  Tindall contends the trial court (1) abused its discretion when it prevented him from arguing that he possessed a religious exemption from criminal liability, and (2) committed prejudicial misconduct by asking him and his co-founder questions that constituted improper judicial comments on the evidence and essentially directed a guilty verdict.  He also asserts that his conviction on count 2, possession for sale, must be reversed because the statute of limitations was not tolled and had expired.  We disagree with his contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Tindall and April M. are ministers and co-founders of Jah (God) Healing Church (Jah Healing), a nondenominational, nonprofit religious organization.  Jah Healing operated locations in Big Bear, Fallbrook and Murrietta.  Tindall oversaw the Murrietta location.  Membership in Jah Healing was open to individuals of all religions and beliefs.  However, only individuals who came to Jah Healing and signed a member agreement were permitted to obtain cannabis.

Cannabis was described as a sacrament of the church and as a means of bringing individuals closer to their maker.  Cannabis contains tetrahydrocannabinol (THC), a psychoactive substance.  Church

---

[1]     Undesignated statutory references are to the Health and Safety Code.

2

members could meet with a minister at the church to request a sacrament or ceremony and were asked to provide a voluntary donation to receive cannabis. Jah Healing did not hold a license issued by the California Department of Cannabis Control.

In 2019, Murrieta police investigated a citizen's complaint regarding a Jah Healing location and a residence in Riverside County. Vehicles parked at the residence were registered to Tindall and April. Based on observations at both locations and an undercover operation conducted at the Jah Healing location, police obtained search warrants.

At the residence, police recovered what appeared to be a business plan entitled " 'Jah game plan of healing centers' " which Tindall created. The document referred to Tindall and April, including their payment to a website used to locate marijuana dispensaries. The document discussed business, profits, profit splitting, sales at a store, and selling specified quantities of product for set dollar amounts. Police also recovered timesheets, receipts, invoices, and a document labeled "inventory" listing marijuana and THC products. Law enforcement seized the THC products and cannabis at both locations, including more than 30 pounds of cannabis and hundreds of pounds of THC infused edibles, sodas, vape cartridges, and pre-rolled marijuana cigarettes.

At trial, Tindall testified that Rastafari is a religion centered on talking about philosophical issues, chanting, and the use of the sacred plant, cannabis. He explained that the purpose of Jah Healing was to "spread our culture" and to consume cannabis to achieve spiritual elevation. A corporate filing dated December 2017, listed Tindall as the chief financial officer of Jah Healing. Tindall acknowledged providing cannabis to church members in exchange for donations to Jah Healing.

Although donations were not "forc[ed]" Tindall stated that Jah Healing could not continue helping others without receiving donations.

## DISCUSSION

## I. *FREE EXERCISE CLAUSE*

A. Additional Background

The People moved in limine to exclude any argument that Tindall could not be convicted of violating sections 11359 and 11366 because these statutes allegedly infringed his First Amendment right to free exercise of religion to use cannabis as a religious sacrament. After Tindall argued it would be improper to preclude a religious freedom defense, the People agreed that religion could come in for purposes of context but that the defense should be precluded from arguing that there was any religious exemption for the alleged criminal conduct.

The court partially granted the motion. It allowed testimony that Tindall had marijuana as part of his free exercise of religion but he could not claim a defense that religious freedom permitted him to violate the law. The court cautioned the People that they needed to object to any testimony inconsistent with the court's ruling. After defense counsel sought clarification, the court indicated it would allow limited testimony to negate the specific intent to sell, give away, or use cannabis. Ultimately, the court granted the motion in part and denied it in part, subject to a possible Evidence Code section 402 hearing to determine whether proposed testimony was admissible under its ruling.

B. Analysis

Tindall argues the trial court erred by excluding testimony or argument that his right to freely exercise his religion allowed him to maintain a church and engage in activities that would otherwise violate

4

sections 11359 and 11366. He contends these statutes are not neutral laws of general applicability and any burden they impose on his religious freedom must be evaluated under strict scrutiny. He also claims he should have been allowed to argue he possessed a religious exemption to section 11366 under the Religious Land Use and Institutionalized Persons Act (RLUIPA; 42 U.S.C. § 2000cc et seq.) because section 11366 regulated the use of Jah Healing as a church and doing so placed a substantial burden on his religious exercise in violation of RLUIPA.

Tindall's primary contention is that the trial court erred by excluding testimony or argument that sections 11359 and 11366 burdened his ability to exercise his religion. Unlawful possession of marijuana for sale under section 11359 requires proof that the defendant possessed the marijuana with the intent of selling it and had knowledge of both its presence and its illegal character. (*People v. Harris* (2000) 83 Cal.App.4th 371, 374; CALCRIM No. 2352.) Section 11366 criminalizes (a) opening or maintaining a place (b) "with a purpose of continuously or repeatedly using it for selling, giving away, or using a controlled substance." (*People v. Hawkins* (2004) 124 Cal.App.4th 675, 680; CALCRIM 2440.) Here, the court instructed the jury that Tindall was guilty only if he maintained the place for selling or giving away cannabis. Accordingly, the jury was expressly precluded from convicting him based solely on cannabis consumption.

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law … prohibiting the free exercise' of religion." (*Fulton v. City of Philadelphia* (2021) 593 U.S. 522, 532.) Nonetheless, an

5

individual's religious beliefs do not excuse "compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." (*Employment Div., Dept. of Human Resources of Oregon v. Smith* (1990) 494 U.S. 872, 878–879 (*Smith*).) Accordingly, a state may prohibit "religiously inspired" drug use without violating the free exercise clause of the First Amendment. (*Smith,* at pp. 874, 878–879 ["We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."].) The Constitution therefore does not require states to carve out religious exceptions to criminal drug laws.

The Supreme Court has explained that allowing people to disregard neutral, generally applicable laws based on their personal religious beliefs would undermine the rule of law and is neither constitutionally required nor workable. (*Smith, supra*, 494 U.S. at p. 885.) A violation of the Free Exercise Clause occurs only when a regulation or law that is not " 'neutral' " and " 'generally applicable' " burdens an individual's "sincere religious practice." (*Kennedy v. Bremerton Sch. Dist.* (2022) 597 U.S. 507, 525.) If such a showing is made, strict scrutiny applies. (*Ibid.*) A law lacks general applicability only when it prohibits religious conduct while permitting secular conduct that similarly undermines the government's asserted interests. (*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah* (1993) 508 U.S. 520, 542–546.)

Here, the evidence does not show that sections 11359 and 11366 prevent Tindall or Jah Healing church members from using or possessing cannabis as a sacrament. Instead, these statutes enforce neutral state laws of general applicability prohibiting unlicensed

cannabis sales and distribution. Enforcement of such laws does not violate the Free Exercise Clause of the First Amendment. To the extent Tindall claimed his religion required him to give away cannabis to church members, such conduct is criminal regardless of whether it is motivated by religious or secular believes. Religious motivation does not transform otherwise unlawful distribution of cannabis into constitutionally protected conduct. (*Smith, supra*, 494 U.S. at pp. 874, 878–879.) Accordingly, Tindall has not demonstrated that the statutes violated his right to freely exercise his religion under the First Amendment.

Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) A trial court has no discretion to admit evidence that lacks relevance. (*People v. Babbitt* (1988) 45 Cal.3d 660, 681.) Because the right to freely exercise religion did not permit Tindall to violate sections 11359 and 11366, the trial court did not err by excluding testimony or argument premised on that theory.

Tindall also claims he should have been allowed to argue he possessed a religious exemption to section 11366 under RLUIPA. Tindall, however, did not argue application of RLUIPA in opposition to the People's motion in limine and therefore forfeited this issue. (*People v. Partida* (2005) 37 Cal.4th 428, 433–434 [" '[W]e have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable.' "].) Accordingly, Tindall's remedy is limited to a claim of ineffective assistance of counsel.

7

To support an ineffective assistance of counsel claim, a defendant "bears the burden of showing by a preponderance of the evidence that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*People v. Centeno* (2014) 60 Cal.4th 659, 674.) "On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

"RLUIPA provides that a government land-use regulation 'that imposes a substantial burden on the religious exercise of a . . . religious assembly or institution' is unlawful 'unless the government demonstrates that imposition of the burden . . . is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.' " (*Int'l Church of the Foursquare Gospel v. City of San Leandro* (9th Cir. 2011) 673 F.3d 1059, 1066 (*City of San Leandro*).) A substantial burden under RLUIPA " 'must place more than an inconvenience on religious exercise,' " and instead must be "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." (*County of San Bernardino v. Mancini* (2022) 83 Cal.App.5th 1095, 1105.) "RLUIPA applies if '. . . [the] burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes . . . individualized assessments of the proposed uses

8

for the property involved.' " (*City of San Leandro*, at p. 1066, citing 42 U.S.C. § 2000cc(a)(2)(C).)  "[A] governmental entity makes an individualized assessment—thus triggering RLUIPA—'when [it] may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use.' " (*Redeemed Christian Church of God (Victory Temple) Bowie, Maryland v. Prince George's Cty.* (4th Cir. 2021) 17 F.4th 497, 507.)

Here, assuming without deciding that section 11366 is a land use regulation, defense counsel could have reasonably decided not to raise a RLUIPA defense because section 11366 is a generally applicable criminal statute that applies equally to a church or a secular organization.  Its enforcement does not depend on, or invite, any discretionary or case-by-case evaluation of how a particular property is used.  Because the statute does not involve individualized land-use determinations, RLUIPA is inapplicable as a matter of law.  Counsel therefore had a rational tactical basis for declining to advance a meritless argument, and Tindall cannot establish deficient performance or prejudice on this record.

## II. *JUDICIAL MISCONDUCT*

A. Additional Background

April testified that a church member could select the cannabis product the member wanted, would be told the suggested donation amount, the minister would bless the sacrament, and the member would be given an envelope to provide a donation if the individual chose to do so.  She stated anyone could become a member if the individual went through the ceremony and signed the membership agreement.  When asked by the prosecutor whether anyone is turned away, she replied "I

9

would not." Shortly after this response, the court interrupted cross-examination to question April:

"BY THE COURT:

"Q. What if an eight-year-old wanders into your place and says," I want to get closer to God. Give me marijuana"? What are you going to do?

"A. I'm not going to do that. Well, first of all, they're not even of age. For myself, I mean, they're a minor. The parents need to be responsible for their children. I mean - -

"Q. I didn't see that on your church membership, though. It said everybody can be a member.

"A. Yeah. Everybody can. Well, I guess we should put 'except minors,' unless there has been—I've had some cancer patients. I did have a little boy that died that we were helping with CBD oil, and he did have THC. We gave donations to the mother, but that was the mother gave the approval. The child ended up dying, but that is one incident where a child would get it, but they would not receive it inside the temple. The mother would come get it.

"Q. But you don't have that on your paperwork.

"A. Maybe that's something we [*sic*] overseen.

"Q. Maybe.

"A. Yes.

"Q. What about the church of fentanyl?

"A. Church of what?

"Q. What if I wanted to open up a church of fentanyl?

"A. I can't speak for that.  I am speaking for my cannabis church.

"Q. Right.  But under your logic if I had a fentanyl church and I wanted to provide it to anybody because I thought I could get closer to God, got them high, got them closer to spirit.  Under that logic we could open the church of cocaine or tar heroin.

"[DEFENSE COUNSEL]: Your Honor, I would object to this question.

"THE COURT: Right.  Your objection is overruled.

"THE WITNESS: I don't believe it's the same thing.  Cannabis is not a drug.  All those things that you just told me are harmful.  They hurt people.  They kill people every day.  When have you heard that cannabis has killed anybody?  It's only benefited people.  I mean, all those things you just said - - I'm totally against all of that.  This is completely different.  This is spiritual.

"Q. BY THE COURT: So if your drug doesn't hurt people, then it's okay?

"A. Mine is a sacrament.  It is not a drug.

"THE COURT: Okay."

During further cross-examination, the prosecutor followed up on the court's question regarding fentanyl, with April explaining that, "[C]annabis is our sacrament.  It is 100 percent different.  It's not harmful.  Like I said, it's a healing agent."  The court then allowed the jurors to write questions, with one juror asking about an age restriction for membership, with April replying a person needed to be 18 years old to become a church member.

Tindall testified on direct examination that the "divine order" required him to distribute cannabis. He accepted donations in exchange for the cannabis sacrament or gave the cannabis away. During cross examination, he admitted storing cannabis at his home to be given away at the Jah Healing location to anyone who signed the membership agreement. At one point during cross examination the court admonished Tindall in front of the jury to answer the questions and not respond with argument or statements. Shortly thereafter, the court took an early break and again admonished Tindall, outside the jury's presence, reminding him that the jury would be instructed to consider a witness's conduct when evaluating credibility. After defense counsel completed his redirect examination, the court questioned Tindall as follows:

> "BY THE COURT:
>
> "Q. Mr. Tindall, you're charged in counts 1 and 3 with Health and Safety Code violation 11366. It sounds like, in response to what your attorney's questions and the district attorney's questions, that—Let put it this way: I'm not sure what you're saying about that particular charge because there's only two things that are required: One is that you opened or maintained a place; and, two, you opened or maintained the place with the intent to sell or give away a controlled substance, specifically cannabis, on a continuous or repeated basis. And it sounds like you admitted that you did both. Am I correct or incorrect on that?
>
> "A. I'll do it until the day I die or until God tells me not to do it anymore.
>
> "Q. Well, the exception is unless of course you're properly licensed to do that.

"A. They don't offer a license for a church to do this. Then it becomes contraband. Contraband is something totally different than sacrament. So when you go through a dispensary or license, that's no longer a sacrament. That's a contraband. The way to make it a sacrament, you've got to get it from God or from a church. So if Jah Healing shut down where do we get it?

"Q. So basically you're telling me you don't believe in getting a license because you're a church?

"A. Well, I know I can go on the Indian reservation in Bishop, and it's tax-free and license-free. I don't know why I have to be a Native Indian or on an Indian reservation to exercise God's law. And the Bible says, as well as in Revelation, the leaf of the tree will be on each side of the river, and it shall be the healing of the nation. They were talking about cannabis and not only for us, but it's stopping others to partake in their religious sacrament if Jah Healing is shut down.

"Q. Well, that may be, but the law, the secular law doesn't say anything that there's a church exemption for a violation of 11366. It just simply says if you maintain any place. It doesn't say anything that it's okay to do it if you have a church.

"A. Well, I have the RLUIPA law where it says you can't discriminate against a religion. That was passed in the year 2000. If we can put it on the board for the jury to see what RLUIPA law is? It says you're not supposed to discriminate against a religion. You can do it out of the house. If we could put the RLUIPA law on the screen for the jury so they can see what I'm talking about. The RLUIPA law says we can't—

"[PROSECUTOR]: Your Honor, I'm going to object at this.

13

"Q. BY THE COURT: That's my point to you. It's sustained. [¶] The point that I'm giving and the law that I'm going to be giving is going to be to the jury. Are you saying that you just don't believe the law and that's why—

"A. Well, I have the Ninth Amendment where it says I don't have to have a hunting license, a driver's license—

"[PROSECUTOR]: Objection. Nonresponsive.

"BY THE COURT: Are you simply saying you just disagree with the law, or are you saying you aren't violating this law?

"A: I go by the common law. I go by God's law, not manmade law. See, just like the UCC Code, it's maritime, admiralty, administrator. That's a wartime—

"[PROSECUTOR]: Objection. Nonresponsive.

"THE COURT: All right. I think you've answered my questions to the satisfaction."

Based on defense counsel's request, the trial court instructed the jury with CALCRIM No. 3530 which told jurors they were the sole judges of the evidence and believability of witnesses, the court's role was not to tell jurors what the verdict should be, and to not take anything the court said or did as an indication of what the court thinks about the evidence, the witnesses or what the verdict should be.

B. Analysis

Tindall argues the trial court's statements, disguised as questions, discredited his defense, effectively directed a guilty verdict on the two alleged violations of section 11366, and constituted judicial misconduct.

14

As an initial matter, other than a single objection during April's testimony, defense counsel never objected to the trial court's questioning and Tindall has forfeited any claim of error. (*People v. Raviart* (2001) 93 Cal.App.4th 258, 269.) To avoid forfeiture, Tindall argues any further objection would have been futile, an immediate admonition would not have cured the harm, and the questioning affected his substantial rights.

These conclusory assertions are insufficient. Tindall has failed to show that further objection would have been either ineffective or futile. Nothing in the record suggests the trial court would have refused to entertain a timely objection or corrective instruction, particularly if defense counsel had raised his objections at side bar after the court's questioning. Even assuming Tindall had preserved his claims, his argument fails on the merits because the record does not support his assertion that the questions constituted prejudicial error. (*People v. Monterroso* (2004) 34 Cal.4th 743, 781.)

A trial judge is authorized to call and interrogate witnesses. (Evid. Code, § 775.) This includes questioning witnesses to clarify evidence, cover evidentiary omissions, or provide witnesses with the opportunity to fully explain their testimony. (*People v. Hawkins* (1995) 10 Cal.4th 920, 947–948 (*Hawkins*).) Judicial questioning must remain restrained, neutral, and even handed. (*Id.* at p. 948.) A trial court exceeds its authority if it excludes material evidence from the jury, distorts the evidentiary record, signals—explicitly or implicitly—how the case should be decided, or supplants the jury's ultimate responsibility to determine the facts. (*Ibid.*) The court must not undertake the prosecutor's role or " ' " ' "create the impression it is

15

allying itself with the prosecution." ' " ' " (*People v. Rockhill* (2025) 115 Cal.App.5th 1230, 1242–1243 (*Rockhill*).)  Rather, a trial judge may examine a witness when doing so would fairly aid in clarifying the evidence, avoiding confusion, filling gaps in the testimony, permitting explanation, or eliciting facts necessary to a just determination of the matter.  (*People v. Carlucci* (1979) 23 Cal.3d 249, 256.)  The trial judge, however, may not take a witness out of the hands of his counsel and proceed along an independent and extensive line of examination and cross examination.  (*People v. Boggess* (1924) 194 Cal. 212, 241.)

Claims of judicial misconduct are reviewed de novo based on the entire record.  (*People v. Williams* (2021) 60 Cal.App.5th 191, 202.)  The analysis proceeds in two steps.  We first evaluate whether the trial court's questioning of a witness amounted to judicial misconduct.  (*Ibid.*)  If misconduct is found, we then consider whether it resulted in prejudice to the defendant requiring reversal.  (*Ibid.*)  To determine prejudice, "we must ask whether it is 'reasonably probable the jury would have reached a different guilt verdict had the court refrained from asking these questions.' " (*Id.* at p. 205.)

We "determine the propriety of judicial comment on a case-by-case basis in light of its content and the circumstances in which it occurs." (*People v. Cash* (2002) 28 Cal.4th 703, 730.)  Our inquiry is not whether the trial judge's actions or comments were ideal, but whether the conduct was so prejudicial that it denied the defendant a fair trial, rather than a flawless one.  (*People v. Harris* (2005) 37 Cal.4th 310, 347.)

Applying these principles, Tindall first contends the court's questions to April were irrelevant and highly inflammatory because

16

they put an image in jurors' minds that Tindall and Jah Healing engage in behavior that could harm small children. We disagree, in part. During cross examination, April testified she would not turn a prospective member away and "anyone" could become a member if they go through the ceremony and sign the membership agreement. Given that testimony, the court's hypothetical regarding a child obtaining cannabis did not introduce an extraneous or inflammatory issue; rather, it tested the logical limits of April's sweeping assertion and clarified whether any restrictions existed. In that respect, the court's question whether she would give a child marijuana served to illuminate an apparent omission in her testimony.

However, although the court's subsequent question about a fentanyl church may have been intended to probe whether April's reasoning rested on a claimed distinction between cannabis and other controlled substances, it challenged April's logic rather than clarifying her testimony. The trial court would have been better advised to sustain defense counsel's objection, instruct the jury to disregard the questions, and end this line of inquiry. Instead, the trial court again became argumentative by asking "So if your drug doesn't hurt people, then it's okay?"

Tindall next contends the questions the court posed to him went even further, directing the jury to find him guilty on the two felony counts alleging a violation of section 11366. He claims the questions took on the role of a prosecutor, usurped the jury's authority and denied him his right to a fair trial. The reporter's transcript shows that although Tindall was evasive at times, he testified both during direct and cross examination, that at Jah Healing he gave away cannabis or

17

accepted monetary donations in exchange for cannabis. Against this backdrop, the court summarized the elements of a section 11366 violation and asked a yes-or-no question to clarify whether Tindall disputed that his conduct satisfied those elements. When Tindall responded with narratives and legal argument, instead of refocusing him to response with a yes-or-no answer, the court commented on the evidence that Tindall did not possess a license to sell cannabis and responded to Tindall's narrative responses with additional argumentative questions.

While the court's questions were neither discourteous nor disparaging, nor did they involve repetitive or hostile interrogation, they nonetheless crossed the line from restrained even handed neutrality (*Hawkins, supra*, 10 Cal.4th at p. 948), into conduct that risked creating an impression the court was allying itself with the prosecution (*Rockhill, supra*, 115 Cal.App.5th at pp. 1242–1243). This is demonstrated when the court challenged Tindall's logic and engaging in a back-and-forth dialogue.

Even so, we reject Tindall's contention that the court's questions to him and April prejudiced his defense. First, the cases Tindall relies on are inapt. In *People v. Santana* (2000) 80 Cal.App.4th 1194, the appellate court found judicial misconduct based on repetitious and adversarial questioning of three defense witnesses spanning "page after page of reporter's transcript," which "created the unmistakable impression [the court] had allied itself with the prosecution in the effort to convict" the defendant. (*Id*. at p. 1207.) No comparable pattern exists here. The trial court's questions were both limited in scope and duration.

18

This case is likewise distinguishable from *People v. Perkins* (2003) 109 Cal.App.4th 1562. There, the trial court aggressively cross-examined the defendant to undermine his credibility, elicit admissions establishing willful violations of a restraining order, and invite the jury to draw adverse inferences bearing directly on guilt. (*Id.* at pp. 1570–1573.) Here, by contrast, the court did not impeach Tindall or accuse him of dishonesty. Nor did the court elicit new incriminating facts, as Tindall had already admitted the conduct forming the basis of the section 11366 charges.

Under the applicable standard, it is not reasonably probable the jury would have reached a more favorable result absent the challenged questioning. April and Tindall both testified that one of the primary purposes of Jah Healing was to provide cannabis to individuals who signed a membership agreement. Those admissions independently established the elements of a section 11366 violation. Unlike in cases where judicial misconduct fills evidentiary gaps or supplies missing proof, the evidence here was overwhelming and the court's intervention brief. Defense counsel's failure to object or seek a sidebar further supports the conclusion that any potential prejudice was minimal and not apparent at trial. Additionally, the court instructed the jury with CALCRIM No. 3530, expressly reminding jurors that they were the sole judges of the facts and that nothing the court said or did should be taken as an indication of the proper verdict.

Viewed in the context of the entire record, the trial court's questioning did not prejudice Tindall. The court did not withdraw material issues from the jury and did not usurp the jury's fact-finding role. Accordingly, because there is no reasonable probability the jury

19

would have reached a different verdict absent the challenged questioning, reversal is not warranted.

### III. *STATUTE OF LIMITATIONS*

The People filed a misdemeanor complaint on June 18, 2019, charging Tindall with multiple counts including that, on or about May 8, 2019, he unlawfully sold or gave away cannabis (§ 11360, count 1). The complaint further alleged that Tindall willfully and unlawfully transported, imported into the state, sold, furnished, administered, or gave away cannabis, and offered or attempted to do the same. On August 11, 2021, the People dismissed the misdemeanor complaint and filed the instant felony complaint.

In the felony complaint, the prosecution alleged in count 2 a violation of section 11359, subdivision (b), unlawfully possessing marijuana for sale, on or about May 8, 2019. Tindall contends the one-year statute of limitations expired and count 2 is time-barred because it was not alleged in the original misdemeanor complaint. The People do not dispute that, where the charging document on its face indicates it may be time-barred, a criminal defendant can invoke a statute of limitations defense at any time. (*People v. Williams* (1999) 21 Cal.4th 335, 341.) They argue, however, that the misdemeanor that occurred on May 8, 2019, alleged in the original misdemeanor complaint, stemmed from the same conduct that gave rise to the violation of section 11359 charged in count 2 of the felony complaint. Accordingly, they contend count 2 is not time-barred because the statute of limitations was tolled from the time the misdemeanor complaint was filed. We agree.

We review de novo legal questions regarding application of the statute of limitations. (*People v. Brown* (2018) 23 Cal.App.5th 765, 771.)

20

Generally, the prosecution for a misdemeanor must commence within one year after commission of the offense. (Pen. Code, § 802, subd. (a).) Under Penal Code section 804, prosecution commences by filing an indictment, information, or misdemeanor or infraction complaint; arraigning the defendant on a felony complaint; or issuing an arrest or bench warrant that adequately identifies the defendant.

The statute of limitations is tolled when a "prosecution of the same person for the same conduct is pending in a court of this state." (Pen. Code, § 803, subd. (b).) The critical inquiry is whether the charges involve the "same conduct." By its plain terms, section 803, subdivision (b) applies whenever a new charge is based on the same conduct or behavior for which the defendant is already being prosecuted or was previously prosecuted.

Here, the misdemeanor charged as count 1 in the misdemeanor complaint alleged a violation of section 11360 (unlawful transportation of cannabis for sale or gift) that occurred on or about May 9, 2019. That allegation is based on the same conduct that later gave rise to the violation of section 11359 charged in count 2 of the felony complaint. As Tindall noted, when the prosecution filed the instant case to charge felony violations of section 11366, occurring on or about May 8 and 29, 2019, these replaced the two previously charged misdemeanor violations of section 11360 (misdemeanor transport/sell marijuana) for the same dates. Consistent with this conclusion, the People note that at sentencing the parties and the trial court agreed that section 654 applied to count 2 because it stemmed from the same conduct as count 1. Because count 1 of the felony complaint replaced count 1 of the

21

misdemeanor complaint, both counts and felony count 2 necessarily involved the same underlying conduct.

Tindall relies on *People v. Terry* (2005) 127 Cal.App.4th 750 (*Terry*) to support his contention that count 2 is time barred. This case is distinguishable. In *Terry*, the original pleading alleged one lewd act count occurring within a particular period. (*Id.* at p. 757.) An amended pleading added six more lewd act counts for the same time frame. (*Ibid.*) The appellate court held that the amended pleading did not relate back to the original because the new counts did not allege the "same conduct" as the original, noting that the prosecutor had "maintained that each count represented a separate lewd act . . . ." (*Id.* at p. 769.) Here, unlike in *Terry*, the charges in the original misdemeanor complaint and the subsequent felony complaint were based on the same conduct.

Finally, Tindall argues tolling should not apply as this would result in an unfair " 'enlargement of the charges' " against the defendant " 'after running of the statue' " because the prosecution appears to have replaced count 1 of the misdemeanor complaint with count 1 of the felony complaint, while also charging a previously uncharged offense, as count 2 in the felony complaint. He bases this argument on a Law Revision Commission comment to section 803, cited in *Terry, supra*, 127 Cal.App.4th 750 that " '[t]he test of the "same conduct," involving as it does some flexibility of definition, states a principle that should meet the reasonable needs of prosecution, while affording the defendant fair protection against an enlargement of the charges after running of the statute.' " (*Id.* at p. 768.)

Tindall's argument ignores the statutory scheme making criminal statutes of limitations longer for more serious crimes. (Statutes of Limitations for Felonies (Jan. 1984) 17 Cal. Law Revision Com. Rep. (1984) p. 313; see Pen. Code, § 799, subd. (a) [prosecution for an offense punishable by death or life imprisonment, or for the embezzlement of public money, may be commenced at any time]; Pen. Code, § 800 [six-year limitations period for offenses punishable by eight or more years' imprisonment]; Pen. Code, § 801 [three-year limitations period for offenses punishable by imprisonment for less than eight years].) Nothing in the language of section 803, subdivision (b) suggests tolling depends on the seriousness of a new charge. Rather, allowing tolling to apply irrespective of the gravity of the offense aligns with the Legislature's overall design. In contrast, Tindall's proposed reading inverts that design by lengthening the limitations period for minor crimes while, perversely, shielding more serious offenses from prosecution.

We conclude that the filing of the misdemeanor complaint tolled the statute of limitations as to count 2 of the felony complaint. Therefore, count 2 was not time-barred.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, J.*

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.

---

* Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.